498 A.2d 1331

**Francy KURIGER, Appellant,**

v.

**Lynn CRAMER.**

Superior Court of Pennsylvania.

Argued March 25, 1985.

Filed Sept. 13, 1985.

Judith L. Jones, Easton, for appellant.

Before SPAETH, President Judge, and CIRILLO and SHOYER *, JJ.

SPAETH, President Judge:

This is an appeal from an order denying appellant's motion to remove a compulsory non-suit. We agree with appellant that the trial court erred in entering the non-suit, and therefore reverse and remand for proceedings consistent with this opinion.

The facts must be stated in the light most favorable to appellant, for she was the plaintiff below.[1] So stated, they are as follows.

Appellant rented a mobile home from appellee. The term of the lease was from January 10, 1982, through January 10, 1983, and the rent was $225.00 per month; appellant paid a security deposit of one month's rent. N.T. at 51. She lived in the mobile home with Robert Hamilton, the couple receiving regular weekend visits from Hamilton's two children. N.T. 2, 30. When appellant moved in, the heat would not go on when the thermostat was set. Hamilton told appellee about this, and appellee said that the heat could be turned on my pushing a "reset" button. N.T. at 4. Throughout the winter, however, the heating system operated erratically, and twice the pipes froze. N.T. 4–5.[2] In September and October, when the need for heat again arose,[3] the system broke down altogether. Hamilton testified:

---

* Honorable Kendall H. SHOYER, Senior Judge of the Court of Common Pleas of Philadelphia County, Pennsylvania, is sitting by designation.

1. *See* citations and discussion *infra.*

2. Under the terms of the lease, appellant was responsible for providing fuel for both the heating and hot water system. She testified that at the relevant times fuel was available. Plaintiff's Exhibit 9; N.T. at 45–48A.

3. Relations between appellant and appellee were apparently strained. On September 1, 1982, appellee filed a Landlord/Tenant complaint

Q. Could you describe what difficulty you noted when you first began using the heating system in the beginning of this winter?

A. Well, it was different times in September that it was cold enough to use it. And when we first started it up by hitting the reset button, it would come on. But it would only stay on for about an hour and shut itself down. And then no matter how many times I hit the reset button, it wouldn't come on until at least the following day—sometimes two or three days later. And when it would, it would first fill the trailer up with black smoke. And then after clearing out the smoke, the heater would run itself for about an hour and then shut down again.

Q. Now, you're describing what occurred during September and October of 1982?

A. Yes.

Q. Okay. What happened after October or during October of 1982 to change that situation?

A. Well, around October the 15th pushing the reset button for the furnace wouldn't make it run any more. It just wouldn't do anything.

Q. How long did that condition last?

A. Well, it lasted with no heat at all until November the 1st when I went to Mr. Cramer [appellee] and asked him if he was going to fix it. And when he agreed he would, I gave him the rent check for November. And he came down and said that a filter which is outside of the fuel

against appellant in district court. After hearing, the district justice entered judgment for possession in favor of appellee and awarded damages of $33.10. Appellant filed a notice of appeal. When appellee failed to respond, judgment of non pros was entered in appellant's favor on November 22, 1982. R. at 10. After appellant filed the complaint that is the subject of this appeal, on December 22, 1982, *see infra,* appellee counterclaimed and sought actual damages of $1,885.00, punitive damages of $5,000.00, and an order for possession. R. at 6. On February 8, 1983, the district justice issued an order for possession that bore the same docket number as the complaint for which judgment of non pros had previously been entered. R. at 10. On February 18, 1983, the trial court ordered that the district justice's order for possession be set aside. R. at 11. The trial court did not address appellee's counterclaim, and it is therefore not at issue here.

tank was dirty. So, he cleaned it, started the furnace up. The trailer filled with smoke. It ran. He left, but it only ran for about—matter of a few hours and quit.

N.T. at 5–6.

During this period, appellant and Hamilton kept warm by wearing heavy clothing and by closing off all rooms except the living room, which they heated with borrowed kerosene heaters. N.T. at 8. Appellee made some attempt to repair the heating system by such expedients as priming, and then replacing, the fuel pump. N.T. at 9–10. Hamilton's brother, who had some training in furnace repair, also attempted to repair the system. N.T. at 32–33. Neither Hamilton nor appellee called a professional repairman.

In December 1982 appellant withheld the month's rent; she apparently did not place it in escrow.[4] N.T. at 12. She then asked Lehigh Valley Legal Services for assistance. On December 17, 1982, counsel for appellant notified appellee, by letter, that "lack of heat or other essentials constitutes a breach of [an] implied warranty of habitability," and requested appellee to take "immediate steps to remedy the heating situation." Plaintiff's Exhibit 1. On December 18 or 19, 1982, appellee left a note at the mobile home informing appellant and Hamilton that he had removed both the control box from the thermostat and the water valve; the removal of these devices completely shut off heat and water to the mobile home. N.T. at 14.

On December 22, 1982, appellant filed her complaint. Although filed in equity, the complaint included a count in assumpsit and a count in trespass. Count I, in assumpsit, alleged that appellee's failure to remedy the heating system, after repeated notice, constituted a breach of the implied warranty of habitability implied in all residential leases by operation of law. On this count, appellant sought damages of $900 in the form of an abatement of rent, as well as such further abatement as the court might deem appropriate after the date the complaint was filed. Count II, in equity alleged that irreparable harm would result

---

**4.** *See infra* n. 5.

from a continuation of the lack of heat and hot water. On this count, appellant sought a preliminary injunction, pending hearing, and then a permanent injunction, and also, unspecified damages, a waiver of bond requirements and costs, and such other relief as the court deemed appropriate. Count III, in trespass, alleged that appellee's action in removing the thermostat and water valve constituted a wrongful eviction. On this count, appellant sought unspecified actual damages, punitive damages of $5,000, and such other relief as the court deemed appropriate. R. at 1.

The trial court granted appellant's motion for a preliminary injunction, and enjoined appellee, pending hearing, from interfering with appellant's quiet enjoyment and from withholding heat and water. R. at 2. On December 23rd and 24th, appellee replaced the thermostat's control box and the water valve, although appellant remained without hot water. N.T. at 16. On December 29, after a hearing, the trial court ordered that the preliminary injunction should remain in effect until time of trial; that the case was set for non-jury trial during the week of January 17, 1983; and that the rent should be placed in escrow.[5] R. at 5.

The trial was held on January 19, 1983. Appellant was still in possession, although the lease had expired and she had received notice that it would not be renewed. Defendant's Exhibit "A"; N.T. at 53–55. The trial court heard appellant's evidence, consisting of the testimony of Hamilton, Hamilton's son Duane, and appellant. At the close of appellant's case, upon motion of appellee,[6] the court entered a compulsory nonsuit. On January 31, appellant filed a motion to remove the nonsuit. R. at 9. On May 10, 1983, the trial court sitting en banc entered an order denying the motion. R. at 21. Appellant appeals from this order.[7]

---

**5.** The record contains no indication whether appellant complied with the order to place the rent in escrow.

**6.** *See infra* n. 10.

**7.** An appeal will not lie from an order entering a compulsory nonsuit, but only from an order denying a timely motion to remove the nonsuit. *See* 9 *Standard Pennsylvania Practice* § 58:61, 65; 1 *Goodrich-Amram* 2d § 231(b):4.1.

The standard governing the entry of a compulsory non-suit is the same in equity as at law, *see* Pa.R.C.P. 1512, and is well-established:

> A judgment of nonsuit can be entered only in clear cases, and a plaintiff must be given the benefit of all evidence favorable to him, together [with] all reasonable inferences of fact arising therefrom, and any conflict in the evidence must be resolved in his favor. Thus an order granting a nonsuit is proper only if the jury, viewing the evidence and all reasonable inferences arising from it, in the light most favorable to the plaintiff, could not reasonably conclude that the elements of the cause of action have been established.

*Morena v. South Hills Health System,* 501 Pa. 634, 638, 462 A.2d 680, 682–83 (1983) (citations omitted). *See also Fisher v. Findlay,* 319 Pa.Super. 214, 215–16, 465 A.2d 1306 (1983), *citing Jurich v. United Parcel Service of New York,* 239 Pa.Super. 306, 361 A.2d 650 (1976) ("A compulsory nonsuit may be entered only in a clear case where the facts and circumstances lead unerringly to but one conclusion."); 1 *Goodrich-Amram* 2d § 231(b)(4), *citing Sargeant v. Ayers,* 358 Pa. 393, 57 A.2d 881 (1948) (Compulsory nonsuit entered at the end of the plaintiff's case because of failure to prove a prima facie case should be entered "only when it is inconceivable, on any reasonable hypothesis, that a mind desiring solely to reach a just and proper conclusion ... after viewing the evidence in the light most advantageous to the plaintiff, could determine in his favor the controlling issues involved.") The reason for this standard is the drastic effect of entering a compulsory nonsuit: it forecloses the plaintiff's right to begin a new action upon the same cause of action. *See* Pa.R.C.P. 231(b); 1 *Goodrich-Amram 2d* § 231(b)(5).[8]

---

8. Pa.R.C.P. 230.1, "Compulsory Nonsuit at Trial," became effective January 1, 1984, and so does not apply here. As the comment to the rule notes, however, the rule "for the most part continues the prior practice." The rule was necessitated by the repeal of 12 Pa.C.S. § 645, effective June 27, 1980, which, however, remained in effect until

■ The trial court rested its decision to enter a compulsory nonsuit primarily on the ground that "plaintiff's [appellant's] evidence is clearly insufficient in that her remedy at law is complete and adequate." Order of tr. ct. at para. 2. It is true that the assumpsit and trespass counts of the complaint should have been heard, if at all, at law.[9] In the ordinary case filed in equity, the defendant, by preliminary objection, raises the issue of an adequate non-statutory remedy at law. *See* Pa.R.C.P. 1509(c). Here, the trial court, and not the defendant, first raised the issue,[10] *see*

January 1, 1984, *see* 42 Pa.C.S. § 20003(b), and therefore applies here. It provided in pertinent part:

> Whenever the defendant, upon the trial of a cause in any court of common pleas of this commonwealth, shall offer no evidence, it shall be lawful for the judge presiding at the trial to order a judgment of nonsuit to be entered, if, in his opinion, the plaintiff shall have given no such evidence as in law is sufficient to maintain the action, with leave, nevertheless, to move the court in banc to set aside such judgment of nonsuit; ....

9. As we have mentioned, appellant's complaint in equity included counts in assumpsit and trespass. Although "there is case law to the effect that an action in equity may be joined with an action at law where each action turns on the same legal question," 14 *Standard Pennsylvania Practice* § 80:5 at 357, the trial court did not address the question of possibly improper joinder.

10. The trial court first raised the issue of the existence of an adequate remedy at law. At the close of appellant's case, the court asked whether appellee wished to make any motions. Counsel for appellee responded:

> MS. SCHNELLER: Your Honor, at this point I would like to move that the complaint against Mr. Cramer stating that he—the injunction against Mr. Cramer—the temporary injunction be dismissed and that a further injunction not be entered on the grounds that he has taken efforts to repair and restore the heating system. N.T. at 56.

In response, the trial court asked counsel for appellant to present authority in support of her contention that injunctive relief was appropriate. The colloquy continued:

> MS. JONES: Your Honor, it's my understanding that injunctive relief in Pennsylvania can be issued upon the showing of several things, one, irreparable harm to the plaintiff, two, whether the relief sought would have benefit [*sic*] the plaintiff and do minimal or no harm at all to the defendant and that plaintiff has a reasonable chance of succeeding ultimately on the merits of the action before the Court. The complaint before the Court—

> THE COURT: Well, there's one that precedes all of that, and that is that there's no adequate remedy at all.

N.T. at 58, but there is authority for the proposition that whenever the existence of a legal remedy becomes apparent, the court may *sua sponte* raise the issue of whether the action should be transferred to the law side. *See Carelli v. Lyter,* 430 Pa. 543, 547, 244 A.2d 6, 8 (1968); 5 *Goodrich-Amram 2d* § 1509(c):2 at 127. Here, however, the trial court did not transfer but dismissed appellant's action, and in that, the court erred.

Pa.R.C.P. 1509(c) provides:

(c) The objection of the existence of a full, complete and adequate non-statutory remedy at law shall be raised by preliminary objection. If the objection is sustained, the court shall certify the action to the law side of the court. If not so pleaded, the objection is waived.

And we have held that

a complaint in equity cannot properly be dismissed because there exists an adequate remedy at law. Such an objection may be raised by preliminary objections, but if they be sustained, the court is compelled by Pa.R.C.P. 1509(c) to certify the action to the law side of the court. In this respect, the court is given no option; certification to the law side is mandatory. 5 Goodrich-Amram 2d § 1509(c):2. See: *Klemow v. Time Incorporated,* 466 Pa. 189, 194–195, 352 A.2d 12, 15 (1976), *cert. denied,* 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91 (1976); *Shaffer v. Dooley,* 452 Pa. 414, 416, 308 A.2d 597, 598 (1973); *Carelli v. Lyter,* 430 Pa. 543, 546, 244 A.2d 6, 8–9 (1968); *Aughenbaugh v. North American Refractories Co.,* 426 Pa. 211, 218, 231 A.2d 173, 177–178 (1967); *Wilson v.*

MS. JONES: Thank you, Your Honor.
THE COURT: That's the problem I'm at. I don't know of any Pennsylvania cases that have held that a violation of a lease is grounds for equitable relief.
N.T. at 58.
Thus, while the trial court chose to treat the defense motion quoted above as a motion for a compulsory nonsuit, *see* Order of tr. ct. at 1; *see supra* note 6, the transcript makes clear that the trial court first raised the issue of the existence of an adequate remedy at law *sua sponte.*

*King of Prussia Enterprises, Inc.,* 422 Pa. 128, 133, 221 A.2d 123, 126 (1966).

*Blair v. Guthrie Development Corp.,* 305 Pa.Super. 292, 296, 451 A.2d 537, 539 (1982).

*See also McGovern v. Spear,* 463 Pa. 269, 273, 344 A.2d 826, 828 (1975) (where activity sought to be enjoined stopped prior to filing of complaint in equity, trial court erred in entering summary judgment as appellants had remedy at law for harm allegedly suffered and court should have certified action to the law side.)[11] It is true that a trial court may properly dismiss a complaint filed in equity where a pending action at law alleges the same facts, for in such a case the plaintiff is not foreclosed from pursuing his remedy at law.[12] *See Myshko v. Galanti,* 453 Pa. 412, 415, 309 A.2d 729, 731 (1973); *Herzog v. Witco Chemical Corp.,* 447 Pa. 202, 205, 290 A.2d 256, 258 (1972). Here, however, no such action was pending.

The trial court did not entirely rest its decision to enter a compulsory nonsuit on the ground that appellant had an adequate remedy at law. It also found:

3. Since plaintiff has not introduced evidence of out-of-pocket expenditures, her proof is also insufficient regarding legal damages.

4. It is true that the plaintiff has been deprived of full enjoyment and use of the premises. But, she is in default of her rent. In our opinion, the amount of rent withheld

**11.** It is important to note that the adequate remedy at law at issue here is non-statutory. Had appellee's claim been that a remedy had been provided by the legislature, then the trial court would have been correct in dismissing the action. *See* Pa.R.C.P. 1509(b); 5 *Goodrich-Amram 2d* § 1509(b):(1) at 118–19; *Peitzman v. Seidman,* 285 Pa.Super. 228, 427 A.2d 196 (1981).

**12.** The trial court relied on our opinion in *Easton Theatres v. Wells Fargo Land and Mortgage Co.,* 265 Pa.Super. 334, 401 A.2d 1333 (1979), *appeal dismissed as moot* 498 Pa. 557, 449 A.2d 1372 (1982), in support of the proposition that a trial court may dismiss a complaint in equity *sua sponte* because it finds that an adequate remedy at law exists. *See* Order of tr. ct. at 2. The cases upon which we rely in *Easton Theatres,* however, made clear the specific conditions under which a trial court may do so, which are not present here.

to date is adequate to reimburse her for the general "habitability" loss sustained by her to date.

Order of tr. ct. at paras. 3, 4.

These findings, however, do not support the court's dismissal of appellant's assumpsit count.

A warranty of habitability is implied in all residential leases in this Commonwealth, by the terms of which the landlord warrants that the leased premises will be free of defects "of a nature and kind which will prevent the use of the dwelling for its intended purpose to provide premises fit for habitation by its dwellers." *Pugh v. Holmes*, 486 Pa. 272, 289, 405 A.2d 897, 905 (1979). A breach of the implied warranty may be the basis of a complaint, as well as a defense or counterclaim to a landlord's suit for rent or possession. *See Fair v. Negley*, 257 Pa.Super. 50, 54, 390 A.2d 240, 242 (1978). To establish a breach of the implied warranty of habitability, the tenant must show that "he or she gave notice to the landlord of the defect or condition, that he (the landlord) had a reasonable opportunity to make the necessary repairs, and that he failed to do so." *Pugh v. Holmes, supra*, 486 Pa. at 290, 405 A.2d at 906. The damages suffered as a result of the breach are to be measured by an abatement of rent equal to "the percentage [of the rent] which reflects the diminution in use for the intended purpose[ ]," *id.*, 486 Pa. at 297, 405 A.2d at 909, and "there should be no doubt that recovery will not be precluded simply because there is some uncertainty as to the precise amount of damages incurred[,]" *id.* Appellant's assumpsit count alleged that there was a continuing and serious malfunction of the heating system; that appellee as the landlord had been given repeated notice of the problem; and that he made no adequate repairs. Moreover, appellant alleged specific damages of $900, representing a diminution in the value of the leased premises of 25% in January, February, March, and April, 1982, and 100% in October, November, and December, 1983. R. at 1, ¶ 14–23. These allegations stated a cause of action under *Pugh v. Holmes,*

*supra.* The trial court should therefore have certified the action for trial on the law side.

■ Appellant's trespass count, for "wrongful eviction," did not state a good cause of action, and as to this count we affirm the order of the trial court.[13]

Appellant's trespass count alleged:

31. The Pennsylvania Landlord and Tenant Act, 68 P.S. § 250.501 et seq., and the Pennsylvania Rules of Civil Procedure for Justices of the Peace, Rule 501, et seq. provide for the exclusive remedy for the recovery of possession of real property. The actions of the defendant described above on December 18, 1982, are intentional actions of the defendant and are known to him as being contrary to the laws of the Commonwealth of Pennsylvania.

32. By his actions of December 18, 1982, the defendant has constructively evicted the plaintiff from the leased premises.

33. The actions of defendant on December 18, 1982, constitute a wrongful eviction not sanctioned by the laws of the Commonwealth of Pennsylvania.

R. at 1.

In considering the sufficiency of these allegations, we do not reach appellant's contention that the Pennsylvania Landlord and Tenant Act, 68 Pa.C.S. § 250.501 *et seq.*, and rules implementing it constitute the exclusive means by which a landlord may recover possession of leased premises,[14] for whether or not appellee used wrongful means in

**13.** Although the trial court did not explain its decision to enter a nonsuit on the trespass count of the complaint, we may affirm a correct decision of the trial court on any basis. *See Lobianco v. Property Protection, Inc.,* 292 Pa.Super. 346, 359, 437 A.2d 417, 424 (1981), and authorities cited therein.

**14.** No Pennsylvania appellate decision has addressed the question of whether a landlord's use of self-help, rather than legal process, to evict a tenant may give rise to a cause of action in trespass by the tenant against the landlord. We note, however, that other jurisdictions have recognized such a cause of action. *See, e.g., Mendes v. Johnson,* 389 A.2d 781, 787 (D.C.App.) (1978) ("A tenant has a right not to have his or her possession interfered with except by lawful process, and viola-

resorting to self-help instead of to the remedies provided by the Act, he did not "evict" appellant from the leased premises.

An eviction is an act by a landlord or a third person that interferes with a tenant's possessory right to the demised premises. *See Oakford v. Nixon*, 177 Pa. 76, 81, 35 A. 588, 589 (1896). *See also* 49 *Am.Jur.2d Landlord and Tenant* § 300 (1970). If that act is wrongful, the tenant may sue for damages in trespass or assumpsit. *See Kelly v. Miller*, 249 Pa. 314, 316–17, 94 A. 1055, 1056–57 (1915) ("... there is an implied covenant for the quiet enjoyment of the demised premises, and it is settled in this State that any wrongful act of the landlord which results in an interference of the tenant's possession, in whole or in part, is an eviction for which the landlord is liable in damages to the tenant.") *See also Minnich v. Kauffman*, 265 Pa. 321, 322–23, 108 A. 597, 598 (1919); *Schienle v. Eckels*, 227 Pa. 305, 307, 76 A. 15, 16 (1910). Formerly, an eviction required that the landlord enter the leased premises and physically expel the tenant. The modern view does not require an eviction by physical force. Rather, the court may find that a "constructive eviction" has occurred where a landlord "deprives a tenant of the beneficial enjoyment of the demised premises and which manifests an intention to hold adversely to the tenant." *Walnut-Juniper Co. v. McKee, Berger & Mansueto, Inc.*, 236 Pa.Super. 1, 5, 344 A.2d 549, 551 (1975). *See also Adler v. Sklaroff*, 154 Pa.Super. 444, 447, 36 A.2d 231, 233 (1943); Stern, 1 *Trickett on the Law of Landlord and Tenant in Pennsylvania* (3rd ed. rev. 1973) § 292, 293; 49 *Am.Jur.2d supra* at

tion of that right gives rise to a cause of action in tort."); *Malcolm v. Little*, Del., 295 A.2d 711, 714 (1972) ("The right ... not to have peaceable possession interfered with except by lawful process, [if violated] gives rise to [a] cause of action in tort.") We note further that in Pennsylvania landlords have been enjoined from proceeding with self-help evictions on the basis that their exclusive remedy was an action in ejectment, or by summary process as provided for by the Pennsylvania Landlord and Tenant Act, 68 Pa.C.S. 250.101 *et seq.* and the related Pennsylvania Rules of Civil Procedure for District Justices, 501–82. *See Wofford v. Vavreck*, 22 D. & C.3d 444, 450–52 (1981), and authorities cited therein.

§ 300. Where, as here, a landlord withholds heat, in breach of a lease covenant, our courts have found a constructive eviction that gives rise to an action for damages by the tenant. *See e.g., Schienle v. Eckels, supra; McSorley v. Allen,* 36 Pa.Super. 271 (1908). *See also* Stern, 1 *Trickett on the Law of Landlord and Tenant in Pennsylvania, supra* at § 296.[15]

The theory of "constructive eviction," however, is not available to appellant. "To constitute a constructive eviction, the interference by a landlord with the possession of his tenant or with the tenant's enjoyment of the demised premises must be of a substantial nature and so injurious to the tenant as to deprive him of the beneficial enjoyment of a part or the whole of the demised premises, . . . to which the tenant yields, abandoning the possession within a reasonable time." But, "[h]owever much the tenant may be disturbed in the beneficial enjoyment of the premises by the landlord's wrongful act, there is no constructive eviction if he continues in possession of the whole of the premises. Possession must be given up by the tenant in consequence of the landlord's acts, . . ." 49 *Am.Jur.2d supra* at § 302, 303. *See also Chelten Avenue Building Corp. v. Mayer,* 316 Pa. 228, 232, 172 A. 675, 677 (1934) ("In order that a tenant may rely on constructive eviction . . . he must abandon the premises. . . .") (collecting cases.)[16] Since appellant

15. A court may also find that a tenant who remains in possession has been partially evicted if a landlord disturbs the tenant's possessory interest in only a part of the leased premises. *See, e.g., Kelly v. Miller, supra* (landlord's interference with tenant's use of part of leased theater is partial eviction). *See generally,* 49 *Am.Jur.2d supra* at § 301; Annot., 41 A.L.R.2d § 9 at 1426 (1955) (contrasting "an actual eviction" in which "the possession is interfered with" with a "constructive eviction" in which "possession is not physically interfered with."); Annot., 20 A.L.R. 1369 (1922).

16. In *Pugh v. Holmes, supra,* our Supreme Court explicitly stated that an action for breach of an implied warranty of habitability, as well as the remedy provided by the Rent Withholding Act, 35 Pa.C.S. § 1700–1, supplemented rather than replaced a tenant's cause of action for constructive eviction. *Id.,* 486 Pa. at 286, 405 A.2d at 904. Nevertheless, the inadequacy of constructive eviction as a tenant's remedy, primarily because of the abandonment requirement, provided an impetus to the development of more efficacious statutory and

did not abandon the leased premises, but remained in possession and withheld rent, she may not recover on a theory of "constructive eviction."

 It is of course true that while appellee did not actually or constructively evict appellant, nevertheless, if appellant's allegations prove true, appellee did greatly diminish the value of the leased premises. This is precisely the harm, however, for which appellant seeks recovery on the theory of a breach of the implied warranty of habitability.[17]

The order of the trial court refusing to remove the compulsory nonsuit is affirmed as to Counts II and III of appellant's complaint, but as to Count I is reversed, and the case is remanded with instructions to certify Count I to the law side for trial.

common law remedies. *See* Comment, "The Pennsylvania Project—A Practical Analysis of the Pennsylvania Rent Withholding Act," 17 *Villanova L.Rev.* 821, 825 (1972).

**17.** Appellant also argues on appeal that the trial court erred in entering a nonsuit on Count II of her complaint—the equity count. At oral argument, however, counsel for appellant informed the court that appellant had moved. Her request for injunctive relief is therefore moot, and we may not address it on appeal. *See Graziano Construction Co., Inc. v. Lee,* 298 Pa.Super. 311, 317, 444 A.2d 1190, 1193 (1982) *quoting O'Donnell v. Pennsylvania Liquor Control Board,* 158 Pa.Super. 533, 536, 45 A.2d 369, 370 (1946) (citations omitted) ("It is well established that '[w]e cannot enter judgments or decrees to which effect cannot be given.... The rule is that where ... pending an appeal, an event occurs which renders it impossible for the appellate court to grant any relief, the appeal will be dismissed.") While Count II also contains a claim for damages, and this might in some circumstances avoid mootness, *see McGovern v. Spear, supra,* here appellant seeks damages for the same behavior in Count I.