J-A29009-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| ADAM GRODIN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LON FARR AND REBECCA DIRKSEN | : | |
| | : | |
| Appellants | : | No. 45 WDA 2019 |

Appeal from the Judgment Entered December 19, 2018
In the Court of Common Pleas of Allegheny County at No(s):
LT-18-000368
LT-18-000369

BEFORE:  BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:              FILED FEBRUARY 26, 2020

Appellants, Lon Farr and Rebecca Dirksen (collectively "Tenants"), appeal from the December 19, 2018 judgment entered in favor of Appellee, Adam Grodin ("Landlord"), and against Tenants, after a non-jury trial on Landlord's complaint for possession and recovery of back rent.[1]  After careful review, we reverse and remand for proceedings consistent with this memorandum.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Tenants purport to appeal from the order dated December 13, 2018, denying their post-trial motion; however, an appeal properly lies from the entry of judgment following the trial court's disposition of post-trial motions.  See Fanning v. Davne, 795 A.2d 388 (Pa. Super. 2002).  Although Tenants erroneously appealed from the order denying their post-trial relief, judgment was subsequently entered on December 19, 2018, and their notice of appeal relates forward to that date.  See Pa.R.A.P. 905(a)(5).  Hence, no jurisdictional defects impede our review.

Landlord initiated this action on March 10, 2018, with the filing of a landlord/tenant complaint in the magisterial district court, in which he sought possession of real property and monetary damages for back rent under the parties' residential lease. On March 19, 2018, Tenants filed a counter-claim, seeking return of their security deposit and first month's rent held by Landlord. By order dated March 22, 2018, the magisterial district judge entered judgment in favor of Tenants. Landlord filed timely appeals of both his claim and the counterclaim to the Court of Common Pleas of Allegheny County, which were assigned two separate docket numbers (i.e., LT-18-000368 and LT-18-000369, respectively). The two appeals were consolidated by court order dated May 18, 2018, at docket number LT-18-000368.[2]

On May 31, 2018, a panel of arbitrators entered an award for Tenants in the amount of $6,228.60. Landlord filed a timely appeal from the arbitration award on June 29, 2018. A non-jury trial was scheduled for September 7, 2018.

> The evidence adduced at trial established that … Landlord, at all relevant times[,] owned property located at 5549 Woodmont Street, Pittsburgh, Pennsylvania, 15217. On January 13, 2016, … Tenants executed a lease regarding the property with Landlord that began on August 1, 2016, and ended on June 30, 2017. The

_____

[2] We recognize that our Supreme Court recently held that "the proper practice under Rule 341(a) is to file separate appeals from an order that resolves issues arising on more than one docket. The failure to do so requires the appellate court to quash the appeal." Commonwealth v. Walker, 185 A.3d 969, 977 (Pa. 2018). The Walker holding is not applicable in the instant matter, however, as the aforementioned cases were consolidated prior to Landlord's filing of his notice of appeal.

monthly rent was $2,340.00, plus utilities, gas, electric, water and sewer. On January 18, 2017, Tenants renewed the lease from July 1, 2017, through June 30, 2018. The only change was that rent increased to $2,440.00 a month. Landlord received a security deposit of $2,440.00[,] and the last month's rent of $2,440.00.

On July 9, 2017, [Mr.] Farr emailed Landlord to inform him that Tenants purchased a new home and would vacate the property on August 15, 2017. The parties agreed that Landlord would attempt to either sell the property or lease it to a new tenant[,] and Tenants would be relieved of their lease obligations if this occurred. Landlord advertised the property for rent and listed the property for sale with a real estate agent in August of 2017. Efforts to rent or sell the property were unsuccessful.

Tenants moved out of the property by the end of August, 2017, and had removed all of their possessions from the leased premises by the end of December. Tenants continued to pay rent through February of 2018.

In early February of 2018, Landlord canceled the realtor agreement to sell the property because he had secured a new tenant whose lease would begin on July 1, 2018. Landlord changed the front door locks because it was possible that realtors or others had keys to the property. Landlord did not inform Tenants before he changed the locks and did not give them new keys immediately afterwards. He believed Tenants could still access their property by using their back door key and did not know they were unable to enter the property. After Tenants discovered that the locks had been changed, they contacted an attorney to see if they could terminate the lease.

Landlord received a letter from Tenants dated February 24, 2018, stating they considered the lease terminated as of February 11, 2018, when they were locked out of the premise[s]. It is uncontroverted that after Landlord received the letter, he immediately attempted to provide Tenants with keys for the new locks, offering to personally deliver them to Tenants. Landlord called Tenants, left messages[,] and communicated with them through email, but Tenants refused to accept the new keys.

[The trial court] found it credible that Landlord did not intend to lock Tenants out of the property. Landlord believed that Tenants had a key to the back door deadbolt when he changed the locks, and thought it was the only functioning back door lock.

Although Landlord expected Tenants to use the back door key to access the property, Tenants never received the necessary back door keys. Landlord had not provided Tenants keys to the property when they took possession. [Mr.] Farr had received the keys from the previous tenant, Brendan Meeder, whom he knew. The testimony was unclear whether Tenants received a key for the back door deadbolt, but [Mr.] Farr testified that he was able to unlock the back door deadbolt. [Mr.] Farr stated:

> [W]hen I was verifying that I could not get into the property on February 11, I used the keys that I had and tried to use it on both the deadbolt[,] as well as on the key lock on the back. Neither of the keys I had would operate the knob lock, but they would operate the deadbolt. So[,] it appeared to be that it was two separately sized keys between the deadbolt and the knob, which I would say [] would require two different keys.

The back door had two locks, a handle lock and a deadbolt lock, and Tenants definitely did not receive keys to both locks. Landlord never gave [Mr.] Meeder a key for the back door handle lock because he thought it was broken, so Tenants could not have received one.

Trial Court Opinion ("TCO"), 4/15/19, at 1-3 (emphasis and citations to record omitted; commas added to some numbers).

The trial court entered a verdict in favor of Landlord on September 13, 2018, and awarded him damages in the amount of $5,048.00. On September 21, 2018, Tenants filed a motion for post-trial relief. By order of court dated December 13, 2018, the trial court modified the amount of damages to $4,880.00, but otherwise denied Tenants' motion. A judgment in the amount of $4,880.00 was entered in favor of Landlord and against Tenants on December 19, 2018. Tenants filed a timely notice of appeal on January 3, 2019. Herein, Tenants raise the following issues for our review:

1. Whether the trial court erred in concluding that [] Landlord's act of changing the locks on the front door to the leased

premises during the term of the lease was not a breach of the explicit and implicit covenant of quiet enjoyment terminating the Lease, and [] Tenants' obligation to pay rent[?]

2. Whether the trial court erred in concluding that [] Landlord's act of changing the locks on the front door to the leased premises during the term of the lease did not constitute a constructive eviction of [] Tenants, in part because [] Landlord did not intend to exercise possession[?]

3. Whether the trial court erred in concluding that Tenants failed to present sufficient evidence that [] Landlord's acknowledged breach of the parties' Lease was not material when [] Landlord changed the locks to the front door in violation of the lease, the covenant of quiet enjoyment[,] and[] the[] prohibition against self-help evictions[?]

4. Whether the trial court erred by failing to find that Landlord's act of changing the locks and exercising possession of the leased premises terminated Tenants' obligation to pay rent and entitled Tenants to the return of escrow monies?

See Tenants' Brief at 9-10, 35 (unnecessary capitalization omitted).[3]

We apply the following standard of review to a non-jury trial verdict:

Our appellate role in cases arising from non[-]jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of the jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence

_____

[3] We acknowledge that issue 4 is not listed within Tenants' Statement of the Questions Involved, as required under Pa.R.A.P. 2116; however, their brief does include a separate argument section regarding this claim. Moreover, the record reflects that this issue was properly preserved in Tenants' motion for post-trial relief, and it was addressed by the trial court in its Pa.R.A.P. 1925(a) opinion. Based on the foregoing, we determine that Tenants' omission of this issue from their Statement of Questions Involved does not impede our ability to conduct meaningful appellate review and, thus, we will address the merits of this issue herein.

in the record or if its findings are premised on an error of law. However, [where] the issue ... concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to facts of the case. The trial court, as the finder of fact, is free to believe all, part or none of the evidence presented. Issues of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determination or substitute our judgment for that of the fact finder.

*Gamesa Energy USA, LLC v. Ten Penn Center Associates, L.P.*, 181 A.3d 1188, 1191-92 (Pa. Super. 2018) (internal citations and quotation marks omitted).

Preliminarily, we observe that the parties' lease agreement contains an explicit warrant of Tenants' quiet enjoyment of the property. See Lease Agreement, 1/13/16, at 5 ¶22.[4] Additionally, we note that "[i]n every lease of real property[,] there will be implied a covenant of quiet enjoyment." *Pollock v. Morelli*, 369 A.2d 458, 460 (Pa. Super. 1976).

The legal implication of the covenant [for quiet enjoyment], express or implied, is that the lessor will permit the tenant to enjoy fully the demised premises subject to any rights of the lessor.... The covenant is breached when a tenant's possession is impaired by the acts of the lessor or those acting under him.... The impairment of the lessee's possession need not be total, but the utility of the premises must be substantially decreased by the

_____

[4] The lease agreement provides, in relevant part:

22. <u>QUIET ENJOYMENT</u>: Lessor hereby warrants the quiet enjoyment of Tenant in the leased premises.

*Id.*

- 6 -

landlord's interference with a right or privilege which is necessary to the enjoyment of the premises....

Sears, Roebuck & Co. v. 69th Street Retail Mall, L.P., 126 A.3d 959, 967-68 (Pa. Super. 2015) (internal quotation marks and citations omitted).

Constructive eviction is one species of a violation of the lessee's right to quiet enjoyment. Id. at 973. See also Kohl v. PNC Bank Nat. Ass'n, 912 A.2d 237, 249 (Pa. 2006) (noting that this Court has concluded repeatedly that a breach of the covenant of quiet enjoyment can be demonstrated through constructive eviction).

> To constitute a constructive eviction, the interference by a landlord with the possession of his tenant or with the tenant's enjoyment of the demised premises must be of a substantial nature and so injurious to the tenant as to deprive him of the beneficial enjoyment of a part or the whole of the demised premises, ... to which the tenant yields, abandoning the possession within a reasonable time.

Sears, 126 A.3d at 968 (quoting Kuriger v. Cramer, 498 A.2d 1331, 1338 (Pa. Super. 1985)) (emphasis omitted).

Instantly, Tenants claim that Landlord's act of changing the locks on the front door of the leased premises during the term of their lease constituted a breach of the covenant of quiet enjoyment, as well as a constructive eviction. Tenant's Brief at 19, 24. They argue that when Landlord changed the locks, he effectively terminated their ability to gain access to the leased premises, which they were "entitled to fully enjoy..., including access ... through the front door, without interference from [] Landlord." Id. at 23. In support of their argument, Tenants note that this Court has "consistently held that the covenant of quiet enjoyment is breached not only if the landlord asserts

possession and changes the locks, but merely interferes with access." Id. at 22 (citing Pollock, 369 A.2d at 461). Moreover, Tenants contend that they have "presented clear and convincing evidence that [] Landlord substantially interfered with their possession of the leasehold[,] and[] that they abandoned the leasehold after [] Landlord's actions." Id. at 27-28.

Landlord acknowledges that he changed the locks during the term of Tenants' lease without giving them advanced notice; however, he maintains that this act did not amount to a breach of the covenant of quiet enjoyment or a constructive eviction, as he did not intend to lock out Tenants. Landlord's Brief at 6, 24. Landlord states that he was under the impression the prior tenant had given Tenants keys to the back door and, thus, he thought they would still have access to the premises. Id. at 23-24. After learning that Tenants did not possess back door keys, Landlord testified that he would have provided them with new keys had he been asked. TCO at 8.

The trial court recognized that the parties' lease was still in effect at the time Landlord changed the front door locks and that, although he expected Tenants to use the back door key to access the property, Tenants never received the necessary keys. See id. at 3 (noting that "Landlord never gave [the prior tenant] a key for the back door handle lock because he thought it was broken, so Tenants could not have received one"). Despite these findings, the trial court ruled in favor of Landlord, and reasoned: "Tenants were only locked out because Landlord did not realize they did not have access through the back door. Tenants were not denied access. All they had to do was

- 8 -

contact Landlord[,] and he would have provided them [with] new keys." Id. at 8. After careful review, we deem the trial court's ruling in favor of Landlord to be an error of law, as we determine that the record clearly supports the finding of a breach of the covenant of quiet enjoyment and a constructive eviction.

Our Supreme Court has in-depthly examined the pertinent law of this Commonwealth regarding violations of the covenant of quiet enjoyment and as to what constitutes constructive eviction.

"[I]t is settled in [Pennsylvania] that any wrongful act of the landlord which results in an interference of the tenant's possession, in whole or in part, is an eviction for which the landlord is liable in damages to the tenant." Kelly v. Miller, … 94 A. 1055, 1056 ([Pa.] 1915)…. In Kelly, this Court held that the covenant was breached when the landowner closed several openings joining the leased premises, a theater, with other adjoining premises that were owned or otherwise leased by the tenant. The [C]ourt found that by obstructing access to the adjoining premises, which were not encompassed in the relevant lease, the landowner denied the tenant direct access to rooms necessary to the functioning of the theater such as storage rooms, dressing rooms, and bathrooms. We concluded that these actions interfered with the tenant's possession of the leased premises even though they did not evict the tenant from the theater building covered by the lease.

From Kelly, the Superior Court has concluded repeatedly that a breach of the covenant can be demonstrated through constructive eviction, if the tenant establishes that the utility of the premises has been substantially decreased. See Branish[ v. NHP Prop. Mgmt., Inc.], 694 A.2d 1106 [(Pa. Super. 1997)] (finding breach of covenant of quiet enjoyment where landowner threatened eviction if tenant's boyfriend visited tenant at the property); Jonnet Dev. Corp. v. Dietrich Indus., Inc., … 463 A.2d 1026, 1033 ([Pa. Super.] 1983) (noting that earlier cases required physical disposition or actual disturbance but that "the great weight of authority now is that a constructive eviction" will

suffice);[5] Checker Oil Co. of Del.[, Inc. v. Harold H. Hogg, Inc.], 380 A.2d [815,] 819 [(Pa. Super. 1977)] (holding landowner's erection of guardrail blocking access from public highway to tenant's gasoline station constituted breach of covenant of quiet enjoyment because the alteration deprived tenant of a "valuable feature of the plot" and "substantially reduced its utility"); Pollock..., ... 369 A.2d [at] 458 ... (collecting cases and finding breach of covenant where landowner erected mini-mall around formerly easily accessible dry-cleaning establishment because the structural alteration substantially decreased the utility of the property)....

Kohl v. PNC Bank Nat. Ass'n, 912 A.2d 237, 249 (Pa. 2006).

The application of these principles is further illustrated in Kuriger v. Cramer, 498 A.2d 1331 (Pa. Super. 1985), where the heating system in the appellant's mobile home rental operated erratically throughout the winter and eventually broke down altogether. After the appellee failed to take action to fix the heating system, the appellant withheld rent. The appellee then responded by shutting off heat and water to the mobile home. The Kuriger Court opined that in such cases where "a landlord withholds heat, in breach of a lease covenant, our courts have found a constructive eviction that gives rise to an action for damages by the tenant." Id. at 1338. The Court

_____

[5] See also Weighley v. Muller, 1912 WL 4709, at *4 (Pa. Super. Jan. 1, 1912) (recognizing that the weight of authority no longer requires "physical dispossession or actual disturbance in the possession of the tenant" to constitute a breach of the covenant for quiet enjoyment; a constructive eviction is sufficient); McSorley v. Allen, 1908 WL 3684, at *2 (Pa. Super. Jan. 1, 1908) ("Physical expulsion is not ... necessary to constitute an eviction. Any act of a landlord which deprives his tenant of that beneficial enjoyment of the premises to which he is entitled under a lease, will amount in law to an eviction....").

concluded, however, that the theory of constructive eviction was not available to the appellant in Kuriger, only because she remained in possession of the property. "However much the tenant may be disturbed in the beneficial enjoyment of the premises by the landlord's wrongful act, there is no constructive eviction if he continues in possession of the whole of the premises. Possession must be given up by the tenant in consequence of the landlord's acts[.]" Id. (internal quotation marks and citations omitted).

Instantly, Tenants have clearly abandoned possession of the leasehold. After discovering that the locks on the leasehold had been changed, Tenants informed Landlord via certified letter that they considered the lease to be terminated, and they returned all keys in their possession to him. Tenants' Brief at 15-16. Moreover, after analyzing the relevant principles and case law, we conclude that Landlord's interference with Tenants' enjoyment of the leasehold was certainly substantial, as it not only limited or altered their access to the premises, but completely deprived them of their means to enter the leasehold.

Additionally, we determine that the trial court erred in placing undue emphasis on Landlord's intention regarding the changing of the locks.[6] This precise issue was addressed in Morley v. Morley, 424 A.2d 524 (Pa. Super.

_____

[6] The trial court opined: "Landlord did not intentionally keep Tenants from accessing the property, and [he] wanted to provide new keys as soon as he learned Tenants were locked out.... Landlord's changing the locks was not a constructive eviction, since Tenants could have entered simply by contacting Landlord for new keys." TCO at 7.

- 11 -

1981), where the appellant returned to her rental home after an extended visit with an ill parent, only to find that the appellee had changed the locks. The appellee originally testified that he only changed the locks "because the old locking or latching mechanism ... just disintegrated. The front door knob came off in [his] hand[.]" Id. at 525. Later, the appellee admitted that "he changed the locks on the front door to maintain his privacy, and, [he] had continued to exclude the appellant from the jointly-owned residence...." Id. at 525-26. On appeal, we concluded that the appellee's act in changing the lock on the dwelling, "for whatever reason" and his failure to provide the appellant with a new key constituted a constructive eviction. Id. at 526 (emphasis added). Our decision in Morley was based on the appellee's actions and their effect on the appellant – not on the intent behind those actions.

Similarly, in the case at hand, we must look to Landlord's actions and their effect on Tenants, and not to Landlord's intentions. Regardless of whether he intended to lock out Tenants, by changing the locks on the front door, Landlord prevented Tenants from accessing the leasehold. This Court has consistently found constructive eviction where access to the premises was merely altered or limited in such a way that the utility of the premises was substantially decreased. Thus, we must certainly conclude that constructive eviction has been established where, as here, Landlord's actions completely denied Tenants' access to the property, and where Tenants abandoned the premises as a result.

Given our determination that Landlord's actions constituted a breach of the covenant of quiet enjoyment and constructive eviction, we need not reach the merits of Tenants' claim regarding whether a breach of contract occurred. Our disposition of Tenants' first two claims renders this issue moot.

Finally, we address Tenants' claim regarding whether the trial court erred in finding that they owe past due rent to Landlord, and that they are not entitled to a refund of their security deposit. The trial court opined that Tenants' obligation to pay rent was not terminated when Landlord changed the locks and, thus, concluded that Tenants still owed rent for the months of March through June of 2018. The court further indicated that Tenants were not entitled to a refund of their security deposit, as the funds were being used to offset the amount of rent owed to Landlord. TCO at 5-6. [7]

To the contrary, based on our finding of constructive eviction in the instant matter, Tenants' obligation to pay rent was clearly suspended. "If the tenant is entitled to the beneficial enjoyment of the premises under the terms of his lease, and if he is deprived of this by the act of the landlord, it amounts to an eviction, and will suspend the rent...." Sears, 126 A.3d at 967 (quoting Weighley, 1912 WL 4709, at *4) (emphasis added). See also Hoeveler v. Fleming, 1879 WL 11614, at *2 (Pa. Oct. 15, 1879) (noting "that an eviction

_____

[7] The trial court noted that Tenants did not pay rent beyond February of 2018, and that the lease extended through June 30, 2018. Id. It calculated that Tenants owed a total of $9,760.00 for past due rent (4 months at $2,440.00/month) less the escrow funds ($2,440.00 for the security deposit and $2,440.00 for the prepaid last month's rent), "resulting in an award of $4[,]880[.00] to Landlord." Id. at 6.

- 13 -

of a tenant by the landlord of [the] demised premises suspends the rent"); McCandless v. Findley, 1925 WL 5084, at *2 (Pa. Super. Jan. 1, 1925); McSorley, supra.

Not only did Landlord's actions release Tenants from their obligation to pay rent, but we note that Tenants may also be entitled to recover damages from Landlord. It is well-settled in Pennsylvania that "any wrongful act of the landlord which results in an interference of the tenant's possession, in whole or in part, is an eviction for which the landlord is liable in damages to the tenant." Pollock, 369 A.2d at 460 (citing Kelly, 94 A. at 1056) (emphasis added). "Recovery for breach of [the] covenant [of quiet enjoyment] has been allowed in Pennsylvania where a landlord has evicted the tenant by locking up the leased premises and denying the tenant access[.]" Id. (citing Minnich v. Kauffman, 108 A. 597 (Pa. 1919); Stein v. McGinley, 186 A. 231 (Pa. Super. 1936)). "The general rule … is[] that the lessee may recover … for all losses which he can prove he has actually sustained, or which he will necessarily sustain, under the circumstances, as a result of the unlawful eviction." Id. at 462 (quoting Minnich, 108 A. at 598).

Accordingly, we reverse the judgment in favor of Landlord, and we remand this matter to the trial court for the purpose of determining the amount of Tenants' damages, if any, and to enter the same in judgment for Tenants.

Judgment reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/26/2020