439 A.2d 739

**Delia RIVERA, Appellant,**

v.

**SELFON HOME REPAIRS AND IMPROVEMENTS COMPANY.**

Superior Court of Pennsylvania.

Argued March 3, 1981.

Filed Jan. 5, 1982.

David L. Ashworth, Lancaster, for appellant.

George C. Werner, Lancaster, for appellee.

Before CERCONE, President Judge, and WICKERSHAM and BROSKY, JJ.

WICKERSHAM, Judge:

On September 20, 1976 at about 10:00 a.m. appellant, Delia Rivera, stepped onto a wooden landing at the top of a wooden stairway which provided means of ingress and egress to her apartment at 529 Terrace Road, Lancaster, Lancaster County, Pennsylvania. She fell through the landing onto the pavement below and sustained serious personal injuries. The owner of the property was the appellee herein, Selfon Home Repairs and Improvements Company (hereinafter Selfon) and Delia Rivera was a tenant at that location. In March of 1978 she filed a complaint in trespass alleging, *inter alia*, that her fall and consequent injuries were caused by Selfon in failing to properly maintain the residence, failing to provide a satisfactory means of ingress and egress to the apartment and permitting the wooden structure of the stairway and landing to become decayed, rotten and otherwise unstable and in failing to provide a workman to repair this condition despite previous requests to do so. Complaint, paras. 1–7.

On October 16, 1978, Delia Rivera's case came to trial before the Honorable Paul A. Mueller, Jr. and a jury and the lower court granted defendant's motion for compulsory non-

suit after Delia Rivera rested on liability. A subsequent motion to take off the nonsuit and a companion motion for reconsideration of a motion to amend the complaint were denied on August 11, 1980 with an opinion filed by the Lancaster County Court *en banc*.[1] On September 8, 1980, judgment was entered on the order of August 11, and this appeal followed.[2]

At trial, Delia Rivera and her friend, Mrs. Flora Rivera testified. Flora testified that she accompanied Delia to the office of Selfon where they met Mr. Selfon and discussed the possibility of leasing a property at 529 Terrace Road, Lancaster. After looking at the property, Flora testified they returned to see Mr. Selfon and,

Q. Well, was there any mention about the condition at 529 to Mr. Selfon?

A. Just we mentioned to him the stairs and we also mentioned to him about the condition of the house as far as painting, and he said to us that he was going to send somebody over to take a look at it.

Trial Transcript at 20.

Flora Rivera testified further that:

1. Before Judges Eckman, Buckwalter and Mueller of the Court of Common Pleas of Lancaster County.

2. In *Thomas M. Durkin & Sons, Inc. v. Nether Providence Township School Authority*, 291 Pa.Super. 402, 435 A.2d 1288 (1981) (Opinion by Hoffman, J.), this court held that judgment must be entered on the docket before an order denying a motion to remove a nonsuit is properly appealable. On appeal, Delia Rivera frames the issues as follows:

1. Did not the trial judge err in granting defendants motion for nonsuit, thus denying plaintiff the opportunity to present her case to the jury under the traditional negligence principle requiring the exercise of due care?

2. Did not the trial judge err in not permitting plaintiff to present evidence of an implied agreement to repair the premises owned by defendant?

3. Did not the trial judge err in refusing to allow the complaint to be amended, before the expiration of the applicable statute of limitations, in order to allege an express agreement to repair and a breach of an implied warranty of habitability?

Brief for Appellant at 3.

Q What was next done with respect to lease arrangements for 529 Terrace Avenue or Terrace Road? Did you sign a lease or did Mrs. Rivera sign a lease?

A Well, when we went back to his office, Mr. Selfon's office,—

Q. Where is that office incidentally?

A. It is in the pawn shop here on West King Street.

Q Is that where you met with Mr. Selfon?

A Yes.

. . . .

Q And did you sign a paper on that day?

A Yes, we signed a lease.

. . . .

Q And is there a date on there?

A The twenty-third of August of 1976.

Trial Transcript at 21–23.

Flora Rivera also testified as follows:

Q Mrs. Rivera, did you at some time assist Delia Rivera because of a fall that she had at 529?

A Yes, I did.

. . . .

A It was about 8:00 o'clock in the morning.

Q What day of the week?

A I don't remember. It was during the week but I can't remember.

Q Okay.

A And she was home that day because they were going to install her telephone that same day, so somebody had to be home.

I went to take her kids to school but then I call back for a cup of coffee; and when I knocked on the door, nobody answered but I heard a scream from the back, and she was calling me, you know, and crying. I went through the back and I saw her just laying there. I saw what happened and I said, oh, my God, you know, what happened. She said, well, I fell. So I looked up and I saw, you know,

the hole and everything broken down. She was just laying there. She couldn't move.

Trial Transcript at 27–29.

Delia Rivera testified:

A   On our way back up I mentioned to Flora that the stairs were kind of shaky and she kidded me about it. She said it was just that I wasn't use to wood stairs coming from the city; and I said, well, they just don't seem right, but that was the house that I had decided to rent and we went back to Mr. Selfon.

. . . .

A   We went back to Mr. Selfon and told him that I had made a decision that I wanted 529 and I asked him then if he would paint for me, and he said no, he had painted the house not too long before that and that I would have to be responsible for paint.

I then also mentioned the stairs and told him that they were kind of shaky . . . .

Trial Transcript at 47, 48–49.

Delia then testified as follows concerning the accident of September 20, 1976:

THE WITNESS: I stayed in the house; and since by then my girls had dirtied some of the clothes and things, I decided to do a load of wash. Flora's brother had come in to my washing machine, so I took some clothes downstairs. Then I remembered that I hadn't emptied—excuse me— my children's hamper, so I went upstairs again and took their things and started out the door. When I stepped on the landing, it just gave way and it fell away from the house, and I just sank through.

After that, I was found by Flora.

Q   Where—or let me ask first—how did you land when you fell through the landing?

A   I think on my feet. I went straight down. I remember thinking, oh, my God, my legs, and trying to think of something to grab onto but there wasn't anything.

Q   What was the surface underneath?

A   Concrete.

Q   When you landed, did you remain standing?

A   No, I fell over.

Q   How did you fall?

A   On my chest.

Trial Transcript at 67.

In *Pugh v. Holmes,* 486 Pa. 272, 405 A.2d 897 (1979), decided more than a year before the decision of the lower court *en banc* denying plaintiff's motion to take off the nonsuit and motion for reconsideration of the motion to amend plaintiff's complaint, our supreme court adopted an implied warranty of habitability in residential leases. The court said:

> 'The implied warranty is designed to insure that a landlord will provide facilities and services vital to the life, health, and safety of the tenant and to the use of the premises for residential purposes. *King v. Moorehead,* at 495 S.W.2d 75.' *Pugh v. Holmes,* [253 Pa.Super. 87], 384 A.2d at 1240. This warranty is applicable both at the beginning of the lease and throughout its duration. *Id.* citing *Old Town Development Co. v. Langford,* 349 N.E.2d 744, 764 (Ind.App.1976) and *Mease v. Fox,* 200 N.W.2d 791, 796 (Iowa 1972).
>
> . . . .
>
> Additionally, we agree with the Superior Court that, to assert a breach of the implied warranty of habitability, a tenant must prove he or she gave notice to the landlord of the defect or condition, that he (the landlord) had a reasonable opportunity to make the necessary repairs, and that he failed to do so. [253 Pa.Super. 88], 384 A.2d at 1241.

*Id.* 486 Pa. at 289, 290, 405 A.2d at 905, 906.

Instantly, the evidence would support a factual finding by the trier of fact that a dangerous condition existed with

respect to the premises to be leased, that the landlord was aware of the dangerous condition and failed to exercise reasonable care to repair the condition and finally that the existence of the condition is a violation of an implied warranty of habitability. This is precisely the subject of the Restatement, Second, Property (Landlord and Tenant) § 17.6, Comment a, b, c (1977), representing the modern weight of authority in this area of the law:

### Landlord Under Legal Duty to Repair Dangerous Condition

A landlord is subject to liability for physical harm caused to the tenant and others upon the leased property with the consent of the tenant or his subtenant by a dangerous condition existing before or arising after the tenant has taken possession, if he has failed to exercise reasonable care to repair the condition and the existence of the condition is in violation of:

(1) an implied warranty of habitability; or

(2) a duty created by statute or administrative regulation.

*Cf. Ford v. Ja-Sin.* Del.Super., 420 A.2d 184, 187 n.4 (1980) (The court held that a tenant's guest could recover for her personal injuries against the landlord upon a showing of simple negligence under the Delaware Landlord-Tenant Code, 25 Del.C. § 5101 *et seq.*, 58 Del.Laws, c. 472, effective September 27, 1972, which is entirely consistent with Restatement, Second, Property (Landlord and Tenant) § 17.6 (1977)).

We hold that under the authority of *Pugh* and the Restatement, Second, Property (Landlord and Tenant) § 17.6 (1977), and under the specific and particular facts of the instant case, it was a matter for the fact finder to determine whether or not the landlord was subject to liability for physical harm caused to the plaintiff, Delia Rivera, based upon an alleged dangerous condition existing before the tenant had taken possession; further a question for the fact

finder as to whether or not the landlord failed to exercise reasonable care to repair the condition and whether or not the existence of the condition was in violation of an implied warranty of habitability.

As we have seen, in the modern view expressed in *Pugh* and the Restatement, Second, Property (Landlord and Tenant) § 17.6 (1977), plaintiff had a valid cause of action for submission to the fact finder *as pleaded in her original complaint*[3]; specifically, that the defendant Selfon negligently had failed to properly maintain the residence at 529 Terrace Road; negligently failed to satisfactorily provide a means of ingress and egress to the apartment; negligently permitted the wooden structure of the stairway and landing to become decayed, rotten and otherwise unstable, and negligently failed to provide a workman to repair this condition despite previous requests to do so.

Order of the lower court *en banc* is reversed and the case is remanded for trial consistent with this opinion.

3. Paragraphs 5 and 6 of Delia Rivera's Complaint provide as follows:

5. On or about September 20, 1976, at approximately 10:00 a.m., Plaintiff, Delia Rivera, stepped onto a wooden landing at the top of a wooden stairway which provided means of ingress and egress to her apartment at 529 Terrace Road when she fell through the landing onto the pavement below, sustaining personal injuries more particularly set forth hereafter.

6. The aforesaid fall was caused solely by the carelessness, recklessness and negligence of the Defendant, Selfon Home Repairs and Improvements Company, which consisted, inter alia, of the following:

a. failing to properly maintain the residence at 529 Terrace Road, Lancaster, Pennsylvania;

b. failing to provide a satisfactory means of ingress and egress to said apartment;

c. permitting the wooden structure of the stairway and landing to become decayed, rotten and otherwise unstable;

d. failing to provide a workman to repair this condition despite previous requests to do so;

e. failing to have due regard for the rights and safety of the Plaintiff herein; and

f. being otherwise careless, reckless and negligent.

Complaint at 2.