458 A.2d 1364

Nancy ASPER, Administratrix of the Estate of Joni Marie Asper, Deceased, Appellant,

v.

**Ronald Wayne HAFFLEY.**

Superior Court of Pennsylvania.

Argued Jan. 6, 1981.

Filed March 31, 1983.

Petition for Allowance of Appeal Denied July 21, 1983.

Brett O. Feese, Williamsport, for appellant.

J. Michael Williamson, Lock Haven, for appellee.

Before PRICE *, WIEAND and HOFFMAN, JJ.

PRICE, Judge:

In September of 1976, Joni Marie Asper died of smoke inhalation in a fire which occurred in the apartment which her father, John Asper, rented from appellee, Ronald Wayne Haffley. As a result of her death, the administratrix of Joni's estate instituted proceedings against Mr. Haffley. In August of 1980, appellee's motion for summary judgment was granted and this appeal followed.

Mr. Haffley purchased the premises on which the fire occurred in 1972. Prior to May of 1976, appellee used the front portion of the one story building as an office in connection with his insurance business. The rear portion was used as his own residence. Appellee eventually ceased to reside on the premises and made certain alterations to the structure in anticipation of renting the rear portion of the building. The wall which separated the office from the residence was changed to eliminate two doorways which had connected the living area to the office area. Additionally, appellee installed storm windows on the inside of the windows in the living area. These storm windows could not be opened except by breaking the window panes.

In May of 1976, appellant leased the living area to John Asper, who then occupied the apartment with his four daughters, one of whom was Joni Marie Asper. In the early morning of September 8, 1976, the fire occurred in which Joni, the only person then present, perished. At the time of the fire Joni was apparently in her bedroom and would have been unable to use the exit to the outside because of the location of the fire blocking that means of escape. Evidence of bruises, abrasions and cuts on Joni's hands and arms would permit an inference that she had

* This decision was reached prior to the death of Judge Price.

made an unsuccessful attempt to break through the storm window in her bedroom to escape the fire.

In granting summary judgment to Mr. Haffley, the court below determined that under general principles limiting the scope of landlord liability, appellant had not alleged sufficient facts on which appellee could be held liable on a theory of negligence. The court also held that appellee could not be found strictly liable for maintaining a building in violation of the Fire and Panic Act ("Act"),[1] as the building in which the fire occurred was not subject to regulation under that statute. Finally, appellant was denied the opportunity to amend her complaint to incorporate a theory of strict liability under § 402A of the Restatement of Torts (Second). While we agree with the court below that in this case there can be no recovery on a theory of strict liability, we find that appellant is entitled to present her negligence claim at trial for determination by the fact finder.

## STRICT LIABILITY—THE FIRE AND PANIC ACT.

Appellant's argument for her strict liability claim under the Act is predicated on two propositions: (1) that appellee's building was a structure subject to regulation under the Act and (2) that as such his building was in violation of regulations of the Department of Labor and Industry requiring at least two exits.

Section Two of the Act[2] defines the classes of buildings and structures covered by the statute. Appellant argues that the building is included in both Class I and Class IV.

At the time this case arose, Class I buildings included:

Factories, power plants, mercantile buildings, hotels, office buildings, hospitals, asylums, public and private institutions, convalescent and nursing homes, schools, colleges, school and college auditoriums and gymnasiums when used for public assemblages, airports, airport build-

1.  35 P.S. § 1221 *et seq.*

2.  35 P.S. § 1222.

ings, airplane hangars, dormitories, warehouses, garages, farm buildings, except those used to store produce prepared for market or sell farm products grown, raised or produced by the owner or tenant of the building, and all other buildings specified by the department, not enumerated in Classes II, III, IV and V, wherein persons are employed, housed or assembled, except those farm buildings excluded herein.

35 P.S. § 1222 (1977) (amended 1981).[3]

■ Appellant argues that the one story building was covered under the catch-all clause "... and all other buildings specified by the department, not enumerated in Classes II, III, IV, and V ..." She points to 34 Pa.Code § 37.3, entitled "Scope", which in essence extends the application of the Act to every building in the Commonwealth not specifically exempted by the statute.

In *Commonwealth Industrial Board v. United States Steel Corp.*, 22 Pa. Commonwealth Ct. 590, 597 n. 7, 350 A.2d 433, 437 n. 7 (1976), the Commonwealth Court found that this regulation did extend the Act's application to all unexempted structures. In that case, however, the court noted that the issue of the validity of the regulation extending coverage to the structures involved was not raised. *Id.*, 22 Pa.Commonwealth at 597 n. 8, 350 A.2d at 437, n. 8. We conclude that 34 Pa.Code § 37.3 is invalid insofar as it is intended to extend the coverage of the Act to such a one story single-unit residential dwelling.

While a literal reading of the catch-all clause ending the list of Class I structures could include such a building, as a matter of construction this general phrase should not be extended to encompass structures of a completely different type from those enumerated in the preceding language.

The specifically mentioned buildings which house people include hotels, hospitals, public and private institutions, nursing homes, and dormitories. Appellant's building was

---

3. The 1981 amendments to this section as to Class I buildings relate solely to the farm buildings covered under the Act.

for the occupancy of one family, and not for large numbers of people as is the case with the enumerated structures in Class I. We agree with the court below that if the legislature had intended to cover *all* buildings, it would have been a simple matter to do so expressly, and there would have been no need to carefully list and describe the structures covered by the Act. Therefore, insofar as 34 Pa.Code § 37.3 can be read to include a building such as the one in this case, it exceeds the authority of the Department of Labor and Industry to regulate under the Act, and is invalid.

■ Appellant's attempt to include the dwelling in Class IV must also fail. Class IV buildings include

Tenement houses, apartment houses, apartment hotels, clubhouses, lodging houses and rooming houses.

35 P.S. § 1222. 34 Pa.Code § 37.1 defines tenement houses and apartment hotels as apartment houses. Apartment houses are then described as having more than one story. A clubhouse is defined as a house or building used as a residence for members of a club or organization. Clearly this single apartment is not included in these definitions. Both lodging houses and rooming houses are defined by 34 Pa.Code § 37.1 as boarding houses. A boarding house is defined as "any building except a hotel, inn, or tavern, in which persons are lodged, for a day or night or longer period, for consideration."

The court below determined that the building in this case was not included in this definition for two reasons. First, the court observed that lodging, rooming and boarding houses commonly involve the providing of additional services other than the leasing of living quarters. Secondly, the court found that the decision of the Commonwealth Court in *Baptist Children's House v. Commonwealth of Pa. Industrial Board of Dept. of Labor and Industry*, 51 Pa. Commonwealth Ct. 227, 414 A.2d 159 (1980), applied to exclude coverage. In that case, the Commonwealth Court found that the Department had exceeded its authority under the Act in attempting to regulate a group foster home in a

single family dwelling. As the court in *Baptist Children's House* observed, an interpretation of the Act as including such a structure

> ... seems unreasonably broad in the light of the extensive regulation contemplated by Section 1 of the Act, 35 P.S. § 1221, and therefore may not be imputed to the legislature. 1 Pa.C.S. § 1922(1).
>
> An administrative agency may exercise only those powers which the legislature has granted it, either expressly or by implication, and the grant must be clear and not doubtful. *Pennsylvania Human Relations Commission v. St. Joe Minerals Corp.*, 476 Pa. 302, 310, 382 A.2d 731, 735–36 (1978) ...

*Id.*, 51 Pa.Commonwealth at 230–31, 414 A.2d 161. We agree with the court below that the single family dwelling in this case was not covered under the Act.

### PROPOSED AMENDMENT—402A.

Appellant was refused permission to amend her complaint to state a claim under § 402A of the Restatement of Torts (Second), because the court below found that her request was untimely. The court observed that the case had been pending for three years, and that three separate complaints had been filed without any suggestion that § 402A might be applied. Therefore, the court concluded that "[i]n the space of three years, ... counsel ought to be able to finally decide the legal theories on which a case is to be tried." Slip op. at 10.

█ We are mindful of the fact that amendments to pleadings are to be freely allowed under our rules of civil procedure. *Bata v. Central-Penn National Bank*, 448 Pa. 355, 293 A.2d 343 (1972). This liberality, however, is subject to the qualification that an amendment may not introduce a new cause of action after the statute of limitations has run. *Saracina v. Cotoia*, 417 Pa. 80, 85, 208 A.2d 764 (1965). In this case, the statute had run at the time the amendment was proposed.

■   Section 402A of the Restatement of Torts (Second) reads as follows:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer of his product is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Even if we were to accept appellant's assumption that a residential lease of an existing and previously occupied single family dwelling can be characterized as a "product",[4] we note that a crucial element of § 402A liability is that the seller must be "engaged in the business of selling such a product." Appellant's original complaint does not allege that the landlord was in the business of leasing property. In fact, the record discloses that Mr. Haffley was in the insurance business. (R. 29a, 50a).

Appellant cites *Kuisis v. Baldwin-Lima-Hamilton Corp.*, 457 Pa. 321, 319 A.2d 914 (1974), for the proposition that a claim under § 402A is implicit in an allegation of negligence. In that case, however, averments in the original complaint to the effect that the product was *manufactured* for sale, and sold to the plaintiff's employer were sufficient to compel the inference that the defendant was in the business of selling cranes. No such influence can be drawn from appellee's single lease of his former home to Mr. Asper.

In *Francioni v. Gibsonia Truck Co.*, 472 Pa. 362, 372 A.2d 736 (1977), cited by appellant for its holding that § 402A can apply in the context of a lease, our Supreme Court stated that, "Engagement in the business of 'selling' (leasing) products is, of course, a basic requirement of the rule." *Id.*, 472 Pa. at 369, 372 A.2d at 739.[5]

---

**4.** Appellant cites no Pennsylvania cases which would support such a conclusion, and we have discovered none.

**5.** Comment f to § 402A explains that:

Thus, even those courts and commentators inclined to extend strict liability concepts to the area of housing rental would require for the application of strict liability that the lessor be engaged in the *business* of property rental, and not merely involved in an isolated transaction concerning a personal residential lease. *See, e.g. Boudreau v. General Electric Co.*, 2 Hawaii App. 10, 625 P.2d 384 (1981); *see also*, Love, *Landlord's Liability for Defective Premises*, Wisc.L.Rev.1975: 19, 134. We find that the court below did not err in refusing appellant permission to amend her complaint to allege liability under § 402A.

## NEGLIGENCE

■ We cannot, however, agree with the court below that appellant did not allege sufficient facts on which appellee could be held liable on a theory of negligence. As this court noted in *Rivera v. Selfon Home Repairs and Improvements Co.*, 294 Pa.Superior Ct. 41, 439 A.2d 739 (1982), our Supreme Court in 1979 adopted an implied warranty of habitability in residential leases. *Pugh v. Holmes*, 486 Pa. 272, 405 A.2d 897 (1979). The court in *Pugh* stated:

The implied warranty is designed to insure that a landlord will provide facilities and services vital to the life, health, and safety of the tenant and to the use of the premises for residential purposes ... This warranty is applicable both at the beginning of the lease and throughout its duration ...

Additionally ... to assert a breach of the implied warranty of habitability, a tenant must prove he or she gave notice to the landlord of the defect or condition, that

the basis for the rule is the ancient one of the special responsibility for the safety of the public undertaken by one who enters into the business of supplying human beings with products which may endanger the safety of their persons and property, and the forced reliance upon that undertaking on the part of those who purchase such goods. This basis is lacking in the case of the ordinary individual who makes the isolated sale, and he is not liable to a third person, or even his buyer, in the absence of negligence.

he (the landlord) had a reasonable opportunity to make the necessary repairs, and that he failed to do so. *Id.*, 486 Pa. at 289, 290, 405 A.2d at 905, 906.

In the instant case, the facts alleged and reasonable inferences therefrom were sufficient, if proved, to support a finding that a dangerous condition (the sealed windows and lack of alternative exit) existed with respect to the premises leased, that the landlord was aware of the dangerous condition and failed to exercise reasonable care to correct the condition, and that the existence of the condition was in violation of an implied warranty of habitability.

As we stated in *Rivera, supra,* this is precisely the subject of the Restatement of Property (Second) § 17.6, comment a, b, c (1977), representing the modern weight of authority in this area:

Landlord Under Legal Duty to Repair Dangerous Condition

A landlord is subject to liability for physical harm caused to the tenant or his subtenant by a dangerous condition existing before or arising after the tenant has taken possession, if he has failed to exercise reasonable care to repair the condition and the existence of the condition is in violation of

(1) an implied warranty of habitability;

or

(2) a duty created by statute or administrative regulation.

*Rivera, supra* 294 Pa.Superior Ct. at 47, 439 A.2d at 742. *Cf. Ford v. Ja-Sin,* Del.Super., 420 A.2d 184, 187 n. 4 (1980) (holding that a tenant's guest could recover for her personal injuries against the landlord upon a showing of simple negligence under the Delaware Landlord-Tenant Code, 25 Del.C. § 5101 *et seq.,* consistent with Restatement of Property (Second) § 17.6 (1977)); *Sargent v. Ross,* 113 N.H. 388, 308 A.2d 528 (1973) (landlords, as well as other members of society subject to reasonable duty of care, conclusion springing naturally from court's prior decision adopting implied warranty of habitability and abolishing caveat emp-

tor). *See also, Pagelsdorf v. Safeco Insurance Co. of America,* 91 Wis.2d 734, 284 N.W.2d 55 (1979); *Stephenson v. Warner,* Utah, 581 P.2d 567 (1978).

We hold, in accord with our decision in *Rivera, supra,* and under the authority of *Pugh, supra,* and the Restatement of Property (Second) § 17.6 (1977), that the question of appellee's liability on a theory of negligence is a matter for determination by the factfinder.

Therefore, the order is reversed and the case remanded for trial consistent with this opinion.

Jurisdiction is not retained.

WIEAND, J., files a concurring opinion.

WIEAND, Judge, concurring:

I agree with the majority that the alleged negligence of the appellee landlord was an issue for determination by the fact finder. Compare: *Young v. Garwacki,* 380 Mass. 162, 402 N.E.2d 1045 (Mass.1980); *Pagelsdorf v. Safeco Insurance Company of America,* 91 Wis.2d 734, 284 N.W.2d 55 (1979); *Stephenson v. Warner,* 581 P.2d 567 (Utah 1978); *Sargent v. Ross,* 113 N.H. 388, 308 A.2d 528 (N.H.1973); *Dwyer v. Skyline Apartments, Inc.,* 123 N.J.Super. 48, 301 A.2d 463 (1973), *affirmed without opinion,* 63 N.J. 577, 311 A.2d 1 (1973). However, I am unable to agree that in order to recover the appellant must prove, in addition to negligence, the landlord's breach of an implied warranty of habitability. A breach of a landlord's obligation to provide safe and habitable premises gives rise, in my opinion, to potential liability under two alternative and separate theories: breach of an implied warranty of habitability and/or conventional negligence. See: *Trentacost v. Brussel,* 82 N.J. 214, 231, 412 A.2d 436, 445 (1980); *Young v. Garwacki, supra* 383 Mass. 162, 402 N.E.2d at 1050 n. 9. The injured tenant may recover damages for breach of an implied warranty of habitability for all injuries sustained, whether to his person or to his property, if they have been caused by the landlord's breach. See and compare: *Boudreau v.*

*General Electric Co.,* 2 Haw.App. 10, 17, 625 P.2d 384, 390 (1981); *Mansur v. Eubanks,* 401 So.2d 1328 (Fla.1981); *Trentacost v. Brussel, supra* 82 N.J. at 227, 412 A.2d at 443; 13 Pa.C.S. § 2715(b)(2).[1] The injured tenant may also proceed under general principles of tort law, without proving a breach of the implied warranty of habitability, and can recover damages for injuries proximately caused by the landlord's failure to exercise reasonable care to make the premises safe. See and compare: *Young v. Garwacki, supra* 383 Mass. 162, 402 N.E.2d at 1049; *Pagelsdorf v. Safeco Insurance Company of America, supra* 91 Wis.2d at 743, 284 N.W.2d at 61; *Stephenson v. Warner, supra* 581 P.2d at 568; *Dwyer v. Skyline Apartments, Inc., supra.*

---

1. 13 Pa.C.S. § 2715(b)(2) provides:
   "(b) Consequential damages.—Consequential damages resulting from the breach of the seller include:
   (1) ....
   (2) injury to person or property proximately resulting from any breach of warranty."