## Sieber v. Barnes

*John Wolford,* for plaintiff.
*Nancy Sennett* and *Max Weiss,* for defendant.

LEVIN, *J.,* May 29, 1987—This matter comes before the court on defendant's preliminary objections to plaintiff's complaint on the basis plaintiff has not set forth a cause of action. In the alternative defendant seeks plaintiff to file a more specific complaint.

Plaintiff's complaint, which was set forth in one count, made certain allegations as to defendant's negligence. Plaintiff also alleges therein a breach of warranty of habitability of said premises.[1]

---

1. The relevant paragraphs of plaintiff's complaint are as

In essence, plaintiff's decedent leased commercial space known as 3608-3610 West 12th Street, Erie County, Pennsylvania from defendant for the purpose of operating an investigation business. The above commercial space was located in a real estate complex known as 3604-3610 West 12th Street, Erie County, Pa. On November 22, 1985, plaintiff's decedent died while present on the leased premises allegedly of asphyxiation from carbon monoxide fumes. Plaintiff asserts that these fumes emanated from the furnace. The subject suit was brought by Gregory S. Seiber, administrator of the estate of Herman C. Seiber.

The primary question before the court is whether the preliminary objections should be sustained. The present law of Pennsylvania requires that complaints sounding in negligence be specifically pled where preliminary objections have been filed. See *Connors v. Allegheny General Hospital*, 501 Pa. 306, 461 A.2d 600 (1983). This mandate has been followed by the local courts. *Snyder v. Lyons*, 68 Erie Leg. J. 82 (1987).

A careful review of plaintiff's complaint reveals that plaintiff fails to allege the negligence claims with sufficient specificity, nor does plaintiff allege any statutory violations. Also, the complaint does

---

follows:

"(5) The carbon monoxide saturation came from the inadequacies of the gas-fueled boiler for the office complex of which 3608 and 3610 were a part, and the burner and exhaust system, including flue, for the same.

"(6) Defendant, as the owner lessor of the premises, was negligent in the following:

"(a) failure of inspection of the boiler and exhaust systems;

"(b) failure to properly maintain the boiler, exhaust and air circulation systems.

"(7) Defendant additionally and/or alternatively breached the warrant of habitability for said premises."

not set forth whether plaintiff, aside from a conventional negligence claim, is alleging a separate negligence claim based on breach of implied warranty of habitability. The vagueness of plaintiff's complaint is enough for this court to sustain defendant's preliminary objections. Nevertheless, the grounds on which defendant objects to plaintiff's complaint give rise to three underlying issues which will assuredly be raised at a later date. In an effort to circumvent future argument, this court will address these issues.

The first of these issues is whether the element of notice of a defective condition must be pled in order to establish an action in negligence should said action be based on breach of implied warranty of habitability or otherwise. The next question presented is whether in a negligence action the warranty of habitability can be imposed against a landlord in a commercial lease. The final issue is, can a plaintiff claim damages from a landlord for personal injuries, either under a contract theory or a negligence theory based on a breach of implied warranty of habitability?

Under common law, it has been held that a landlord is immune from civil liability when he unknowingly leases defective premises to a tenant. However, in this commonwealth certain exceptions to this principle have been generally recognized and uniformly applied. By virtue of these exceptions, given certain factual situations, a duty is imposed on landlords to protect tenants from injuries caused by the landlord's failure to maintain the premises in a safe condition. See generally, *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742 (1984). A duty may arise where the lessors know, or should know by the exercise of reasonable care, of certain defective conditions in the premises and then fail to disclose

same to the lessee when possession is transferred to the lessee. Further, a duty, along with a corresponding liability, may attach if the landlord has retained control over the defective portion of the property. In some situations, a duty to repair and/or breach of implied warranty of habitability may impose liability on the landlord for injuries sustained by the tenant. In addition, if there is a violation of a statute, this violation, along with the responsibility created thereunder, could impose a liability on the landlord. See *Feld v. Merriam, supra; Smith v. M.P.W. Realty Inc.,* 423 Pa. 536, 225 A.2d 227 (1967); *Lopez v. Gukenback,* 391 Pa. 359, 137 A.2d 771 (1958); *Henz v. Texaco Inc.,* 352 Pa. Super. 538, 508 A.2d 1200 (1986); *Pierce v. Philadelphia Housing Authority,* 337 Pa. Super. 254, 486 A.2d 1004 (1985).

Finally, this court maintains as a logical extension of the applicable law, that a landlord is responsible if a tenant is injured and a landlord has not directed a reasonable inspection of the premises by a person with the requisite knowledge to look for latent defects. Theoretically, even a landlord himself could make the necessary inspection provided he has the requisite knowledge to do so.[2] This

---

2. Although this court hesitates to pontificate, the court in rendering this order has attempted to apply the pertinent law in a just and fair fashion. This is exactly what our Supreme Court did in *Doyle v. Pittsburgh Water,* 414 Pa. 199, 199 A.2d 875 (1964). The gist of the *Doyle* opinion can be expressed in many ways. Our legal history has been replete with articles and essays stating that to impose financial responsibility on certain ventures would prevent those ventures from being able to continue. For illustration purposes, it has been contended that if strict liability were imposed, manufacturers would be unable to compete in the business world. Also, if the state required parties to be responsible for their vehicles under the lemon law enactments, new car businesses would be placed in an uncompetitive situation. It has even been contended that

principle, in many ways, is the controlling issue in the present case. Admittedly, the law is relatively silent on what type of inspection a landlord must make prior to transferring possession of the premise s to the tenant. The law does impose on the landlord a duty to repair such major components of buildings which are fixtures unless the lease specifically provides otherwise. With this in mind, it is only rational to require a landlord to make a reasonable inspection of potentially dangerous fixtures to determine if latent defects constitute a health hazard.

In a negligence case, where the landlord's duty to the tenant is premised on one of the aforementioned exceptions, liability is contingent on the landlord's notice of the defects on the premises. This element of notice will be established when the landlord has either actual or constructive knowledge of the defect. See *Feld v. Merriam, supra; Kuriger v. Cramer,* 345 Pa. Super. 595, 498 A.2d 1331 (1985); *Asper v. Haffely, supra.* Constructive knowledge is a broad concept. For illustration purposes, a landlord may be charged with constructive notice of a defect where the defect has existed for a considerable length of time. In addition, a landlord may be deemed to have such constructive notice if there was a statutory violation or even if a reasonable inspection by the landlord would have uncovered the defects.

---

payment of workers' claims regardless of fault would bankrupt the employer's insurance carrier. None of the above contentions have proved to be accurate. Liability has been imposed in these cases and neither the business nor the enterprise has for those reasons gone bankrupt. The courts have been able to enforce these doctrines in such a fashion that confusion does not reign supreme. To the contrary, enforcemement of these rights have enabled the judicial process to more adequately protect the rights of all citizens of the commonwealth.

These principles would equally apply to a negligence cause of action even if that cause of action was based on the breach of the implied warranty of habitability. See *Pugh v. Holmes,* 486 Pa. 272, 405 A.2d 897 (1979); *Kuriger v. Cramer, supra; Rivera v. Selfon Home Repairs & Imp. Co.,* 294 Pa. Super. 41, 439 A.2d 739 (1982).

In view of the aforementioned case law, plaintiffs' complaint is deficient since it does not contain requisite allegations.

With respect to the second issue, in this commonwealth, there is a relative dearth of cases involving the applicability of the warranty of habitability to commercial leases. Considering this lack of authority, this court must note that our Supreme Court in its landmark decision in *Pugh v. Holmes, supra,* did not expressly limit the warranty of habitability to residential leases. Research by the court has failed to turn up cases since *Pugh v. Holmes, supra,* that expressly limit the warranty to residential leases. See *C & B Enterprises v. Intercarbon Coal Co.,* 28 D.&C. 3d 285 (1982). It is interesting to note that the Restatement (Second) of Property; Landlord & Tenant §5.1, does not expressly provide that the warranty of habitability is applicable only when property is leased for residential use. Restatement of Property; Landlord & Tenant §5.1, comment b.

The purpose behind reading a warranty of habitability into a residential lease is to protect the tenant who is typically in a weaker bargaining position than the landlord. In effect, the landlord warrants the property is suitable for residential use which coincides with the tenant's expectation that the property is safe for his or her intended use. This warranty would also be consistent with the expectations of safety of the parties in many commercial lease situations. It follows then, in light of the

parties' expectations, the warranty should be implied in a commercial lease. There is no logical reason to make a distinction between the two types of leases. In the final analysis, in determining respective responsibility, it is more just to hold that such a warranty should be excluded from a lease only where the lease document expressly provides for same.[3] See *C & B Enterprises supra.* As such, this court sees no impediment to extending the subject warranty to the commercial lease involved in the present case.

With respect to the final issue, our appellate courts have allowed damages for personal injuries to be claimed in negligence actions based on the implied warranty of habitability or otherwise. *Asper v. Haffley,* 312 Pa. Super. 424, 458 A.2d 1364 (1983); *Rivera v. Selfon Home Repairs & Imp. Co., supra.* Nevertheless, this does not foreclose a party from asserting a conventional contract claim for breach of the implied warranty of habitability in order to recover the limited contract remedies.[4]

## ORDER

And now, May 29, 1987, it is hereby ordered,

---

3. This is pertinent since the landlord will realize a profit from such a venture. A commercial tenant, in paying commercial rent, which in all likelihood is higher than a residential rent, has a right to expect that he will be able to safely conduct business on the leased premises.

4. In *Pugh v. Holmes* 486 Pa. 272, 405 A.2d 897 (1979), the Pennsylvania Supreme Court outlined some available remedies for breach of the implied warranty of habitability:

(a) A tenant may vacate the leased premises. *Id.* at 291, 405 A.2d at 907.

(b) A tenant may utilize a "repair and deduct" remedy. *Id.* at 405, 293 A.2d at 908.

(c) A tenant may demand specific performance. *Id.* at 295, 405 A.2d at 908.

adjudged, and decreed that the preliminary objections filed by defendant are sustained with leave granted to the plaintiff to file an amended complaint within 30 days from the date hereof.