J-A03013-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TIFFANY MATTHEWS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MICHAEL G. & DORENE M. WINCE | |
| Appellees | No. 900 MDA 2016 |

Appeal from the Order Entered May 12, 2016
In the Court of Common Pleas of Lackawanna County
Civil Division at No(s): 15 CV 5882

BEFORE: LAZARUS, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED APRIL 13, 2017**

Tiffany Matthews appeals from the trial court's order granting summary judgment in favor of Appellees Michael G. & Dorene M. Wince (the "Winces") in this slip and fall case. After careful review, we affirm.

On February 21, 2014, Matthews slipped and fell on property she leased[1] from the Winces,[2] located at 1926 Lafayette Street in Scranton, Pennsylvania. The Winces, owners of the property, had purchased the real estate in 2006; Matthews began renting the home from the Winces in March 2013. The subject property is a one-floor, single-family dwelling positioned

---

[1] The parties had a month-to-month oral lease agreement to rent the premises.

[2] Two other tenants also leased the property from the Winces. They are not parties to this appeal.

on an upgrade hill. At the time of the accident, there were front steps leading from the front door/porch area to the front lawn; however, there was no walkway or railing from the base of the porch steps to the sidewalk in the front of the property. The property has a rear entrance/exit from the main floor that leads to a backyard alley/driveway with a parking spot for use by tenants. The tenants access the parking spot by driving up and down the common alleyway/driveway. In the winter months, when the City of Scranton would fail to plow the alleyway/driveway, Matthews would park her car on the street in front of the subject property and use the front door to enter and exit the premises.

On the evening of February 21, 2014, Matthews walked down one of the pathways that she had shoveled on the snowy, icy, grassy hill, toward her car parked on the street in the front of the property. She began to slide on mud and/or snow on the pathway and fell to the ground. As a result of the fall, Matthews sustained a dislocated left ankle, swelling of her left leg, and pain in her left knee; she underwent surgery to set her ankle. Matthews also suffered a blood clot as a result of the trauma to her ankle.

On October 5, 2015, Mathews filed a complaint sounding in negligence against the Winces. The complaint averred that the Winces "managed the property and were responsible for snow and ice removal, maintenance in the front and the back of said property and safe ingress and egress to said property." Matthew's Complaint, 9/5/15, at ¶ 6. Matthews further alleged that the Winces "knew or in the exercise of reasonable care should have had

knowledge of the existence of the dangerous condition [the accumulation of snow and ice on the path] so as to be able to remove it or remedy the condition." *Id.* at ¶ 11.

The Winces filed preliminary objections alleging that portions of Matthews' complaint should be stricken for lack of specificity. After a hearing, the court sustained the objection to one paragraph (¶ 23(L)) of the complaint and overruled, denied and dismissed the remaining objections. The Winces filed an answer and new matter alleging that Matthews, as a tenant-in-possession of the subject property, was responsible for maintaining the entire premises, including the front and back of the property and ensuring that residents had "safe and appropriate methods of ingress and egress to the property." Winces' Complaint, 2/4/16, at ¶¶ 21, 26.

On February 25, 2016, the Winces filed a summary judgment motion claiming that: (1) Matthews fully realized the risks involved in proceeding along the pathway that she shoveled and that she voluntarily assumed those risks; (2) the Winces did not breach any duty owed to Matthews; (3) the Winces were not negligent; and (4) Matthews failed to present sufficient evidence to support a claim against them upon which relief may be granted. On May 12, 2016, following oral arguments, the court granted the Winces' motion finding that there was a safe and satisfactory means of ingress and egress to the subject property by use of a rear entrance way and that the "City's failure to plow the back alleyway does not constitute a breach of the implied warranty of habitability." Trial Court Opinion, 8/16/16, at 8.

Matthews filed a filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal. Matthews presents the following issues for our review:

(1)     Whether [the Winces'] Motion for Summary Judgment should have been denied.

(2)     Whether Defendants Michael Wince and Dorene Wince owed Plaintiff, Tiffany Matthews[,] a duty of care.

(3)     Whether the [t]rial [c]ourt erred in applying the assumption of the risk doctrine and/or the contributory negligence doctrine.

Our standard of review in cases of summary judgment is well-settled. This court will only reverse the trial court's entry of summary judgment only if the court committed an error of law. *Merriweather v. Philadelphia Newspapers, Inc.*, 684 A.2d 137, 140 (Pa. Super. 1996). Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2. In determining whether to grant summary judgment, a trial court must resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. *Id.*

The issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question the appellate court's standard of review is de novo. *Summers v. Certainteed Corp.*,

997 A.2d 1152 (Pa. 2010). This means it need not defer to the determinations made by the lower tribunals. *Id.*

On appeal, Matthews claims that the court erred in granting summary judgment in favor of the Winces where they had a duty to her as her landlord, they maintained control over the area where she fell, and where she was not negligent. Matthews also asserts that because there is a question as to whether the absence of a walkway and/or sidewalk and/or stairs in the front of the property is a dangerous condition, the court should have denied summary judgment and the issue should be resolved by a trier of fact.

Duty of Care

### A. Breach of Implied Warranty of Habitability

> In Pennsylvania, it is well settled that landlords owe a duty to protect tenants from injury or loss arising out of a negligent failure to maintain a rental property in a safe condition. A tenant seeking to recover damages stemming from the condition of a rental property may pursue claims sounding in ordinary negligence or a breach of the implied warranty of habitability.

*Feld v. Merriam*, 485 A.2d 742, 754 (Pa. 1984). In *Pugh v. Holmes*, 405 A.2d 897 (Pa. 1979), our Supreme Court adopted an implied warranty of habitability in residential leases. This warranty, also reflected in section 17.6 of the Restatement (Second) of Property, states:

> A landlord is subject to liability for physical harm caused to the tenant and others upon the leased property with the consent of the tenant or his subtenant b*y a dangerous condition existing before or arising after the tenant has taken possession, if he failed to exercise reasonable care to repair the condition and the existence of the condition is in violation of:*

> (1)    Implied warranty of habitability; or
>
> (2)    A   duty   created   by   statute   or   administrative
>        regulation.

Restatement (Second) of Property, § 17.6 (emphasis added). *See Rivera v. Selfon Home Repairs & Improve. Co.*, 439 A.2d 739 (Pa. Super. 1982) (implied warranty designed to insure that landlord will provide facilities and services vital to life, health, and safety of tenant and to use of premises for residential purposes).

To establish a breach of the implied warranty of habitability, the tenant must show that he or she gave notice to the landlord of the defect or condition, that the landlord had a reasonable opportunity to make the necessary repairs, and that he failed to do so. *Kuriger v. Cramer*, 489 A.2d 1331 (Pa. Super. 1985). In order to constitute a breach of the warranty, the defect must be "of a nature and kind which will prevent the use of the [lot] for its intended purpose to provide the premises fit for habitation[.]" *Staley v. Bouril*, 718 A.2d 283, 285 (Pa. 1998), citing *Pugh*, 405 A.2d at 905.

At her deposition, Matthews testified that on the day she first visited the property it had rained the day before and "it [had] rain[ed] hard because the front of the house where they put the steps in now is like a muddy – like muddy, and like, you would slide walking on it. . . . [Y]ou could see where the mud was running down. So we were asking questions about how we were going to get in and out because, during the summertime, you can use the back door so we were using the back door so the front we didn't even

[use]." Tiffany Matthews Deposition, 1/8/16, at 14-15. In response to asking the Winces how she was to enter and exit the premises in the winter, Matthews testified that the Winces responded, "This is what it was." *Id.* at 15. Matthew stated that despite the fact that she noticed the muddy front lawn on the day she inspected the premises, she also indicated that she thought it might be slippery and yet still decided to rent the premises. *Id.* Matthews further testified that she or one of the other tenants always shoveled the pathway leading from the front door of the property to the street and, that prior to the accident, they would use these pathways to get to the sidewalk and to the front of house. *Id.* at 21-22. Since the accident, Matthews testified that the tenants still do all the shoveling of the property. *Id.* at 41.

At his deposition, Michael Wince testified that tenants of the Lafayette Street house parked behind the home in an alley that cuts through the back of the property and that they "park right there by the back door." Michael G. Wince Deposition, 1/8/16, at 18. Wince also acknowledged that cars could park on the street in the front of the house and that he did not have a plan to put in a front walkway. *Id.* at 18, 25. Wince testified that he mowed the lawn to the property. *Id.* at 20.[3] Finally, Wince testified that Matthews never indicated to him that she had difficulty coming and going

---

[3] Prior to Matthews moving in, the only renovations the Winces made to the property was repainting the interior of the home. *Id.* at 23.

from the property using the front lawn or that she had trouble parking in the back alleyway due to snow. *Id.* at 30-31.

Dorene Wince testified at her deposition that she and her husband had planned to put in a retaining wall and front walkway or stairs when they could financially afford to do so. Dorene Wince Deposition, 1/8/16, at 8. She also testified that she did not recall ever having any conversations with Matthews about whether the Winces were going to do anything with the front of the property in terms of putting in a means of ingress and egress from the front porch steps to the front sidewalk. *Id.* at 9. Dorene testified that before Matthews' fall, they did nothing as landlords to ensure that the tenants' means of egress out the front door was safe; however, she did not have any concerns about the tenants going and coming safely using the front of the property. *Id.* at 11-12. Dorene further testified that she was completely unaware that snow would accumulate in large amounts in the back alleyway because the City would occasionally fail to plow the alley. *Id.* at 12. Finally, Mrs. Wince testified that other than mowing the lawn, her husband did not do anything else on the exterior of the premises. *Id.* at 17.

Instantly, the record, viewed in the light most favorable to Matthews as the non-moving party, does not adduce any evidence to show that Matthews gave notice to the Winces of the alleged defect or condition of the premises, namely the lack of a front walkway. Specifically, Matthews never communicated to the Winces that she often was unable to use the back entrance and alleyway and, as a result, was forced to use the front of the

property as her means of ingress and egress to her parked car on the public street. Moreover, the record does not reflect that the lack of a front walkway prevented Matthews from using the lot for its intended purpose -- to make the premises fit for habitation. **Staley**, **supra**; **Pugh**, **supra**. Accordingly, Matthews could not prevail, as a matter of law, on an action for a violating an implied warranty of habitability. **Kuriger**, **supra**.

## II. Common Law/Ordinary Negligence

In landlord-tenant disputes, the basic elements of a negligence cause of action include the existence of a duty, a breach thereof, a causal connection between the breach and the injury, and actual loss. **Keck v. Doughman**, 572 A.2d 724 (Pa. Super. 1990). However, unlike a claim for breach of an implied warranty of habitability, to prove ordinary negligence a tenant need not give notice. Under a theory of conventional negligence, the injured tenant must prove that his or her injuries were proximately caused by the landlord's failure to exercise reasonable care to make the premises safe. **Asper v. Haffley**, 458 A.2d 1364, 1370 (Pa. Super. 1983). **See also Echeverria v. Holley**, 142 A.3d 29, 34 (Pa. Super. 2016) (reiterating well-established principle that landlords owe duty to protect tenants from injury or loss arising out of negligent failure to maintain rental property in safe condition).

Matthews relies upon this Court's decisions, **Echeverria**, **supra**, and **Rivera**, **supra**, to support her position that the Winces breached their duty

to maintain the subject premises in a safe condition. We find these cases are distinguishable from the instant situation.

In *Echeverria*, several individuals lost their lives to a fire at a multi-family structure, consisting of a two-story unit in the front and a two-story unit in the back of the property. *Id.* at 32. The owner of the property, who had bought the property approximately three months before the fire occurred, did not perform any modifications or repair work on the premises. *Id.* The decedents' estates filed a complaint in common-law negligence for failure to install smoke detectors at the property and for failure to maintain electrical wiring at the property. *Id.* The trial court granted the landlord's motion for summary judgment due to the fact that the plaintiffs could not establish the cause of the fire. *Id.* at 33. On appeal, our Court vacated the judgment and remanded the case, finding that plaintiffs alleged sufficient facts under a theory of common-law negligence to go before a jury. *Id.* at 36. Specifically, the Court found that the absence of smoke detectors constituted a dangerous condition which could potentially be considered, by a jury, to be a breach of a landlord's duty to maintain the property in a safe condition. *Id.*

Here, unlike the case in *Echeverria*, there was no comparable "dangerous condition" on the premises. The fact that the tenant-created pathway down the front lawn of the property was slippery and wet on the day in question is a condition that Matthews was aware of from the moment she rented the property, was a means of ingress and egress she chose to

use despite the fact that the property had another means to enter and exit the home, and was not something that would foreseeably result in injuries to Matthews.

In **Rivera**, while first inspecting the premises, the tenant specifically mentioned her concern about the condition of the wooden landing at the top of a wooden staircase which provided a means of ingress and egress to the leased premises. The landlord assured the tenant that he would have someone come over to "take a look at it." **Id.** at 741. After the tenant fell through the landing and injured herself, she brought a cause of action in trespass against the landlord. Our Court concluded that it was a matter for the fact finder to determine whether or not the landlord was subject to liability for the tenant's injuries based up "an alleged dangerous condition existing before the tenant had taken possession" and whether the landlord "failed to exercise reasonable care to repair the condition and whether or not the existence of the condition was in violation of an implied warranty of habitability." **Id.** at 743.

Here, the Winces never agreed to repair any dangerous condition on the premises when Matthews first inspected the property and decided to lease it. More importantly, the Winces were not even aware of any such condition on the property.

An appellate court's responsibility in reviewing summary judgment is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a prima

facie cause of action, such that there is no issue to be decided by the fact-finder. Pa.R.C.P. No. 1035.2. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied. *Lackner v. Glosser*, 892 A.2d 21, 29 (Pa. Super. 2006).

The law is clear that a landlord is generally not liable for injuries sustained by his tenant on the leased premises when he or she is entirely out of control and possession. *Craig v. Ryan*, 191 A.2d 711 (Pa. Super. 1963). However, there are several exceptions to this general rule. One of these exceptions is where, at the time of the leasing, the landlord knows, or has reason to know, of a defect. *Dinio v. Goshorn*, 270 A.2d 203 (Pa. 1969).

Here, it is undisputed that the Winces did not retain control of the leased premises. In fact, the only actions that the Winces took in relation to the property were to mow the lawn (so that the grass would not exceed a certain height in violation of a local ordinance) and to collect rent checks. The uncontradicted evidence shows that Matthews and the other two tenants of the Lafayette Street property shoveled the front lawn to create a pathway to access the front sidewalk and street in the winter months. They did this on a consistent basis both before and after the accident.

Thus, the paramount issue in this case is whether there were sufficient facts to go before a jury on the issue of whether the Winces breached their duty to keep the premises safe by not erecting a front entrance or whether

the failure to construct a front walkway is, in and of itself, a defect. We answer both questions in the negative.

Under the law, the Winces were responsible for providing a safe means of ingress and egress to the property; to that end, they provided a fully operational rear entrance and a designated tenant parking spot accessed by a common alleyway. The fact that the City of Scranton may have failed to plow the back alleyway making it difficult or impossible for Matthews to park her car in the rear of the property on occasion does not mean that the Winces were negligent and created a dangerous condition for their tenant or failed to maintain the property in a safe condition.

We also cannot conclude that an issue of fact existed with regard to whether a hilly, front lawn without a walkway constitutes a "defect" of the property. All three tenants used the front lawn to come and go from the house when they parked on the street. The mail carrier would use this same path to get to the mailbox that was located on the front porch. Most telling, however, is the fact that the Winces often used the same means of ingress and egress to the home when they would collect rent checks. **Cf. Rivera**, **supra** (where tenant fell through landing leading to apartment that had become decayed, rotten and otherwise unstable, cause of action property submitted to jury); **Reitmeyer v. Sprecher**, 243 A.2d 395 (Pa. 1968) (where tenant injured after falling from defective back porch, court found complaint stated claim for negligence where landlord failed to exercise

reasonable care in performing his promise to repair). Accordingly, there were no facts that could legally entitle Matthews to a right to relief.

With regard to Matthews' claim that the trial court improperly applied the doctrines of assumption of the risk and contributory negligence to the instant matter, they are misguided. The trial court did not apply either doctrine in ruling on the Wince's summary judgment motion; rather, the court concluded that there was insufficient evidence to create a genuine issue of material fact on the issue of the Winces' negligence based on no breach of a duty owed to Matthews.

Accordingly, because the trial court did not commit an error of law in granting the Winces' motion for summary judgment, we affirm. ***Merriweather***, ***supra***.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/13/2017