572 A.2d 724

**Mary L. KECK, Appellant,**

v.

**Carl E. DOUGHMAN and Betty M. Doughman.**

Superior Court of Pennsylvania.

Argued Nov. 14, 1989.

Filed March 19, 1990.

George H. Rowley, Greenville, for appellant.

James D. Elder, Pittsburgh, for appellee.

Before CIRILLO, President Judge, and WIEAND and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from a judgment below, in which appellant, Mary L. Keck, sought to recover for injuries allegedly sustained in a fall on the property of her landlords, Carl and Betty Doughman. The case was tried on theories of negligence and an implied warranty of habitability. The jury returned a verdict in favor of appellees, finding that they were 42% negligent, while appellant was 58% contributorily negligent. On appeal, appellant contends that the trial court erred because it instructed the jury in accordance with § 342 of the *Restatement (Second) of Torts* (1977). Appellant argues that the court's jury instruction effectively precluded her from recovering under the theory of an

implied warranty of habitability. For the following reasons, we agree that the instruction was erroneous; however, we find the error to be harmless. Accordingly, we affirm the judgment below.

Appellees Carl E. Doughman and Betty M. Doughman, husband and wife, are owners of a twin house known as 53 and 53½ South Second Street, Greenville, Pennsylvania. For approximately the last 20 years, Velma Doughman, Carl Doughman's mother, has resided in one half of the house. The plaintiff-appellant, Mary L. Keck, has resided in the other half since July 18, 1972. Part of Mary Keck's lease, both oral and written, included the right to use a common basement area. Mrs. Keck had access to the basement by exiting a door in her kitchen to a landing at the top of the stairs and then proceeding down to the basement. Mrs. Keck had used the laundry facilities in the common basement area until she obtained a washer from a friend. She was unable to establish the date of that acquisition. Subsequent to her obtaining the washer, she continued to use the stone stairway into the basement occasionally in order to use Velma Doughman's telephone.

Mrs. Keck and appellees relayed information concerning the property through Mr. Doughman's mother. According to appellant, she complained to Mr. Doughman's mother about the dangerous condition of the steps before her accident occurred. In June, 1981, Velma Doughman had been hospitalized at Greenville Hospital. During the course of Mrs. Doughman's hospitalization, Grace Rimer, a friend of Mrs. Doughman, would visit the Doughman residence to feed Mrs. Doughman's cat and to bring in the mail. On June 18, 1981, the date of the accident, Mrs. Rimer found that the door was locked. Appellant offered to let her in, and was walking down the stairway to do so when she fell. Appellant then proceeded into the basement and into the Doughman residence, and opened the screen door on the Doughman side, permitting Mrs. Rimer to enter. At the time appellant opened the screen door for Mrs. Rimer,

appellant did not advise her that she had fallen, nor were there any visible signs of injury.

The steps in question were the original stone slabs. As they proceeded downward towards the basement, a ledge existed on the left and right side which was generally parallel to the basement floor. There was no handrail. Natural lighting existed from the window in the upper portion of the door to the outside. At the time of appellant's fall, there was no other lighting on the stairs. There was lighting in the basement area which could be activated by a switch in appellant's kitchen. Appellant was unable to identify which particular tread or slab caused her to fall, nor was she certain as to which step she fell onto. She did, however, testify that upon examination she found a chip out of a step in the area. On June 16, 1983, appellant filed a complaint alleging that appellee had violated the implied warranty of habitability by leasing the premises to appellant in an unsafe condition, and failing to correct that condition after they had a reasonable opportunity to correct it. The complaint also alleged that appellees had been negligent in failing to repair the steps and failing to maintain them in a safe condition. In June 1988, the case went to trial, and on June 23, 1988, the jury entered a verdict finding appellant 58% negligent and appellees 42% negligent. Thus, appellant was awarded no damages. Appellant filed timely post trial motions which were denied on February 1, 1989. This appeal followed.

On appeal, appellant contends that she is entitled to a new trial because of an erroneous jury instruction.[1]   Our

1.  Preliminarily, we must consider whether the issue raised in Mrs. Keck's appeal has been properly preserved for appellate review. The failure to object to an alleged error in the jury instruction precludes a party from assigning the alleged error as a basis for a new trial on appeal. *Eck v. Powermatic Houdaille*, 364 Pa.Super. 178, 527 A.2d 1012 (1987).

Here, appellant argues that the jury should not have been instructed that negligence was an exclusive remedy, and that in order for her to recover under that theory she had to be unaware of the existence of the condition that caused her injury. The record reveals that she raised this issue both before and after the jury charge. *See* N.T. June 23, 1988 at 16–17, R.R. 58a. We conclude, therefore, that appellant's

standard of review of an order denying a motion for new trial on the ground of an erroneous jury charge is well-settled:

An order refusing a new trial will be reversed on appeal only where there has been a clear abuse of discretion or an error of law which controlled the outcome of the case. An erroneous jury instruction may provide the basis for a new trial if it is shown that the instruction was fundamentally in error and that it might have been responsible for the verdict.

*Eck v. Powermatic Houdaille,* 364 Pa.Super. 178, 188, 527 A.2d 1012, 1017 (1987) (citations omitted).

Appellant's specific argument is that the court's jury instruction number seven regarding negligence precluded her from recovering under the theory of an implied warranty of habitability. She maintains that the instruction effectively stated that negligence was the *only* theory under which she could recover, and in order for her to recover under that theory, required that she prove that she was unaware of the condition that caused her injury. She claims that she was prejudiced by that instruction because, as part of her attempt to recover under the warranty of habitability theory, she testified that she had notified appellee of the damaged stair that caused her injury. There continues to be some confusion regarding the relation between these two theories of recovery. Therefore, before we evaluate the merits of appellant's claims, we should emphasize the differences between negligence and the implied warranty of habitability.

### I. Negligence and the Implied Warranty of Habitability

█ The basic elements of a cause of action in negligence are the existence of a duty, breach of that duty, a causal relationship between the breach and the injury complained of, and actual loss or damage. *E.g., Casey v. Geiger,* 346

challenge to the jury charge was properly preserved for appellate review.

Pa.Super. 279, 499 A.2d 606, *allocatur denied* 516 Pa. 638, 533 A.2d 710 (1985). Although these basic principles apply in landlord tenant disputes, the duty of care imposed upon landlords varies depending on who claims to have been injured and the terms of the lease. For example, a landlord who rents an entire building to a tenant may be held to a lower standard of care than a landlord who rents part of a building and maintains control over the remaining parts. *Compare Restatement (Second) of Torts* § 358 with *id.* § 361 (1977).

The implied warranty of habitability is a relatively recent development in the law of torts. In Pennsylvania, the theory was first adopted with regard to residential leases in *Pugh v. Holmes,* 486 Pa. 272, 405 A.2d 897 (1979). The *Pugh* court stated the elements of the warranty of habitability as follows:

> The implied warranty is designed to insure that a landlord will provide facilities and services vital to the life, health, and safety of the tenant and to the use of the premises for residential purposes. This warranty is applicable both at the beginning of the lease and throughout its duration....
>
> In order to constitute a breach of the warranty the defect must be of a nature and kind which will prevent the use of the dwelling for its intended purpose to provide premises fit for habitation by its dwellers. At a minimum, this means the premises must be safe and sanitary....
>
> Additionally ... to assert a breach of the implied warranty of habitability, a tenant must prove he or she gave notice to the landlord of the defect or condition, that he [the landlord] had a reasonable opportunity to make the necessary repairs, and that he failed to do so.

*Id.,* 486 Pa. at 289–90, 405 A.2d at 905–06 (citations omitted). *See also Rivera v. Selfon Home Repairs & Imp. Co.,* 294 Pa.Super. 41, 439 A.2d 739 (1982); *Restatement (Second) of Property* § 17.6 (1977).

Cases in which landlord negligence is alleged are likely to involve potential violations of the broader standard of care required by the warranty of habitability. However, it is important to remember that negligence and the implied warranty of habitability are two different causes of action with distinct elements. As Judge Wieand has noted:

> A breach of a landlord's obligation to provide safe and habitable premises gives rise ... to potential liability under two alternative and separate theories: breach of an implied warranty of habitability and/or conventional negligence.... The injured tenant may recover damages for breach of an implied warranty of habitability for all injuries sustained, whether to his person or to his property, if they have been caused by the landlord's breach.... The injured tenant may also proceed under general principles of tort law, without proving a breach of the implied warranty of habitability, and can recover damages for injuries proximately caused by the landlord's failure to exercise reasonable care to make the premises safe.

*Asper v. Haffley*, 312 Pa.Super. 424, 434–35, 458 A.2d 1364, 1370 (1983) (WIEAND, J. concurring) (citations omitted); *Cf. Trentacost v. Brussel*, 82 N.J. 214, 412 A.2d 436 (1980).

■ The primary differences between the warranty of habitability and negligence causes of action, then, are as follows: First, to prevail on a warranty of habitability theory, a plaintiff need only show injury resulting from the existence of a condition that makes his residence unsafe or unsanitary. A plaintiff seeking to recover under the theory of negligence, on the other hand, must show injury caused by the landlord's breach of a statutory or specifically defined duty that may change depending on the relationship between the parties. Second, to recover for breach of the warranty of habitability, a plaintiff must show that he notified the landlord of the existence of the condition he alleges caused his injury. In a negligence case, no such notice is required, although before liability will be imposed, the landlord usually is required to have failed to correct a condition discoverable through the exercise of reasonable

care. *See Restatement (Second) of Torts, supra* § 358–§ 361. Having described the contours of the theories upon which appellant sought recovery, we now evaluate the merits of her claim.

## II. *Effect of Jury Instructions*

■ The instruction appellant complains of reads as follows:

> The possessor of land is subject to liability for physical harm caused to *licensees* by a condition on the land *if, but only if,*
>
> (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not realize or discover the danger, and
>
> (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and
>
> (c) *the licensees do not know or have reason to know of the risk involved.*

*See* R.R. 44a (emphasis added). This instruction is a verbatim recitation of § 342 of the *Restatement (Second) of Torts*. At trial, appellant testified that she knew of the condition of the steps and advised appellees of that condition. This testimony, of course, was necessary for appellant to prove a case under the warranty of habitability theory. Appellant asserts that the negligence instruction above precluded her from recovering under that theory because it erroneously directed the jury that no recovery was possible under *any* theory unless appellant was *unaware* of the condition that caused her injuries. For the reasons that follow, although we agree that the court's instruction was erroneous, we do not agree that appellant is entitled to a new trial.

The trial court's charge is problematic for two reasons. First, the charge is clearly erroneous under *Pugh v. Holmes*, in that it suggests that appellant could not recover unless she was unaware of the condition of the premises.

As we have noted above, *Pugh* requires that the plaintiff prove that she gave notice to the landlord of the defect or condition in order to recover under the warranty of habitability. In addition, the charge was erroneous because § 342 of the *Restatement (Second) of Torts* does not deal with the issue of the duty of landlords to their tenants. Instead, § 342 defines the duties of possessors of lands to "licensees." The *Restatement* defines a "licensee" as "a person who is privileged to enter or remain on land only by virtue of the possessor's consent." *See id.* A tenant, of course, also is allowed to remain on the owner's property at the owner's consent; however, as the *Restatement* itself recognizes, the duty that a landlord owes to a tenant is not the same. Indeed, the *Restatement* contains some eight specific sections concerning the landlord-tenant relationship. *See id.* §§ 355–362. Unlike § 342, none of the sections governing landlord-tenant relationships purport to state an exclusive cause of action, and only one has a requirement that a tenant be unaware of the dangerous condition in order to recover. *See id.* § 358. Appellant thus rightly notes that an instruction based on *these sections* would not have prevented her from recovering under the warranty of habitability theory. In summary, the court's instruction was erroneous because it was contrary to *Pugh v. Holmes* and also because it was a mistaken statement of principles in the *Restatement* governing a landlord's duty.

Although the § 342 instruction was erroneous, a close review of the trial record nevertheless convinces us that, in light of the unique facts of this case, the error was harmless. Central to this conclusion is the fact that the jury found appellant to be 58% contributorily negligent. In both *Asper, supra* and *Rivera, supra,* this court recognized § 17.6 of the *Restatement (Second) of Property* (1977) as the fundamental standard for analyzing cases involving warranty of habitability questions. Section 17.6 provides:

A landlord is subject to liability for physical harm caused to the tenant and others upon the leased property with the consent of the tenant or his subtenant by a dangerous

condition existing before or arising after the tenant has taken possession, if he has failed to exercise reasonable care to repair the condition and the existence of the condition is in violation of:

(1) an implied warranty of habitability; or

(2) a duty created by statute or administrative regulation.

Comment B to § 17.6 states:

a.) ....The implied warranty of habitability is the basis of a duty on the landlord to maintain the property in a habitable condition. By analogy to the negligence per se doctrine, when the landlord violates this duty, he becomes subject to liability for physical harm resulting from such violation....

b.) ... *[t]he landlord [however] ... has available all the usual defenses to an action in negligence, including contributory negligence and assumption of risk....*

*Id.* (emphasis added). In this case, therefore, appellant's warranty of habitability claim is subject to all of the defenses available in Pennsylvania to an action in negligence. Pennsylvania's comparative negligence statute specifically recognizes that contributory negligence can be a defense in negligence cases:

In all actions brought to recover damages for negligence resulting in ... injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought....

42 Pa.C.S.A. § 7102(a). Here, the jury found appellant to be 58% contributorily negligent, thereby barring her from recovering under the theory of negligence. Because the jury found that her liability was greater than appellees', this finding would also bar her from recovering under the warranty of habitability. Thus, even if the court had given the jury proper instructions, appellant would not be entitled to recover because of her contributory negligence. The

court's giving of the wrong instruction, therefore, was harmless error.

In summary, we hold that the trial court erred because its jury instruction based on § 342 precluded appellant from possibly recovering under a warranty of habitability theory. However, because contributory negligence is a defense to warranty of habitability actions, and because the jury found appellant to have been 58% contributorily negligent, appellant could not have recovered even if the court had given the jury proper instructions concerning the warranty of habitability. We hold, therefore, that the trial court's failure to properly instruct the jury was harmless error.

For the foregoing reasons, we affirm the judgment below.

Judgment affirmed.

WIEAND, J., concurs in the result.