**MELITA MILLER, Appellee**

**v.**

**ALLAN A. CHRISTIAN, Appellant**

No. 91-3410

United States Court of Appeals

for the Third Circuit

March 23, 1992

ALLAN A. CHRISTIAN, *pro se*

STAPLETON, HUTCHINSON and NYGAARD, *Circuit Judges*

## OPINION OF THE COURT

HUTCHINSON, *Circuit Judge*

I.

Appellant, Allan A. Christian (Christian), is appellee Melita Miller's (Miller) former landlord. He appeals an order of the Appellate Division of the District Court of the Virgin Islands affirming a judgment of the small claims division of the Territorial Court of the Virgin Islands[1] for $450.00 in Miller's favor. The territorial court based the $450.00 damage award on its finding that personal property Miller owned was injured when a chronically faulty sewage system serving the leased premises backed up and overflowed into her apartment. It held in a bench trial that Christian was liable to Miller despite a finding that Christian's immediate efforts to remedy the sewage problem were reasonable. After the territorial court entered judgment for Miller, Christian filed a timely appeal to the appellate division of the district court and, after that court affirmed the territorial court's judgment, Christian filed a timely notice of appeal to this Court.

---

[1] V.I.Code Ann. tit. 4, § 111 (Supp.1990) states:

> There is in the Territorial Court a small claims division, in which the procedure shall be as informal and summary as is consistent with justice.

Christian contends the territorial court's finding that he acted reasonably to fix the immediate sewage problem by August 4, 1989 precludes liability. He also argues that the evidence presented by Miller was insufficient to place a dollar value on the injury to Miller's personal property. We disagree. Christian is liable to his tenant Miller under governing principles of the Restatement (Second) of Property. They impose liability for damages to a tenant's personal property caused by a dangerous condition resulting from either a landlord's breach of an implied warranty of habitability or his unreasonable failure to correct a condition that violates local housing regulations. While the territorial court found Christian's August 4, 1989 efforts to correct the immediate sewage problem that damaged Miller's property may have been reasonable, it also impliedly found the recurrent nature of the sewage problem was caused by his unreasonable failure to correct a chronic violation of the local housing code or a breach of his implied warranty of habitability. Accordingly, Miller can recover from her landlord Christian for the property damage she suffered in this case. Therefore, since Christian's argument that Miller's evidence on damages was speculative lacks merit, we will affirm the order of the district court.

## II.

Miller, with her children and grandchildren, lived in a two bedroom, one bathroom apartment she rented from Christian. There was no written lease, and Miller was a month-to-month tenant. See V.I.Code Ann. tit. 28, §§ 241, 242 (1975) (oral leases of duration less than one year permissible). On August 2, 1989, a plumbing problem caused Miller's bathtub to back up and release sewage into her apartment. This was not the first time sewage had backed up in the tub in Miller's apartment. Christian was aware of the recurrent problem and had temporarily fixed it on prior occasions. This time Christian was notified on the same day it happened. Almost at once he tried to get in touch with several plumbers in an effort to get the problem fixed. He was not at first successful. As a result, the problem persisted for a day or two. In the meantime, fetid material from the blocked system had overflowed the tub and percolated from the bathroom into a bedroom in Miller's apartment. There, it damaged some of Miller's clothing, linens and bedding. Some bedding and clothing were also damaged when Miller used them to soak up the overflow in an effort to reduce the danger and nuisance

the percolating filth and its stench posed to her and the children who occupied the apartment with her. Finally, after the efforts of several plumbers, the sewage problem was fixed on August 4, 1989.

The territorial court rejected Christian's contention that he was not liable because he had done everything reasonably possible to correct the sewage problem. Specifically, it found:

> I find from the testimony that this had been an ongoing problem. It had been reported and had been fixed before. I also find that the defendant made reasonable efforts to repair the problem on this occasion in August of 1989. But that he is, nevertheless, liable for the damages which the plaintiff sustained as a result of the sewage backup.

Appellant's Appendix (App.) at 36.

### III.

We have jurisdiction over Christian's appeal pursuant to 28 U.S.C.A. § 1291 (West Supp.1991). The district court had jurisdiction over Christian's appeal from the judgment of the territorial court under V.I.Code Ann. tit. 4, § 33 (Supp.1990).

■■ Whether Virgin Islands law allows a tenant of residential premises to recover damages for injury to personal property caused by a recurring problem that adversely affects the use of an apartment for residential purposes is a legal question over which we exercise plenary review. See Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102–03 (3d Cir.1981). We review the district court's factual findings under the clearly erroneous standard. See Allegheny Int'l, Inc. v. Snyder, 954 F.2d 167, 172–73 (3d Cir.1992). Thus, we apply the same standard as the district court in reviewing the judgment against Christian. See Semper v. Santos, 845 F.2d 1233, 1235 (3d Cir.1988).

### IV.

On liability, Christian contends the territorial court's finding that his efforts to correct the sewage problem between August 2–4, 1989 were reasonable precludes judgment against him. Specifically, he argues that the district court erred in concluding that the judgment of the territorial court is not contrary to its finding that he "made reasonable efforts to repair the problem" on that date. App. at 36. Since the parties had no written lease expressly stating Christian's

obligations to Miller, his duties to her are those which all landlords owe their tenants. Christian says that a Virgin Islands landlord, in the absence of negligence, is not liable to his or her tenant for failure to make repairs unless there is a statute or agreement to the contrary. He cites no Virgin Islands case law or statutory authority that either supports that general proposition or relates it to the facts of this case.

■■ Where there is no governing local law or precedent, V.I.Code Ann. tit. 1, § 4 (1984)[2] "directs us to examine the common law first as expressed in the Restatements, and then as generally understood and applied in the United States." Polius v. Clark Equip. Co., 802 F.2d 75, 77 (3d Cir. 1986). Thus, our decision in this case is informed by the Restatement (Second) of Property (hereinafter Restatement). See Allaire v. United States Trust Co., 478 F.Supp. 826, 827 (D.V.I.1979) (applying Restatement in property dispute); The Lodge, Inc. v. Caravelle Restaurant, Inc., 20 V.I. 268, 273 (Terr.Ct.1984) (same). Where the Restatement expresses no opinion and a split of authority exists, courts should select the sounder rule. Polius, 802 F.2d at 77; Vidal v. Virgin Islands Housing Auth., 20 V.I. 3, 4 (Terr.Ct.1983) (in absence of opinion of drafters of Restatement, reference must be made to United States case law).

■ Section 5.5(1) of the Restatement states that the landlord of leased residential property

> is obligated to the tenant to keep the leased property in a condition that meets the requirements of governing health, safety, and housing codes, unless the failure to meet those requirements is the fault of the tenant or is the consequence of a sudden non-manmade force or the conduct of third persons.

Restatement § 5.5(1). Section 5.5 also provides for an "implied warranty of habitability" which goes beyond the requirement of section 5.5(1). See Restatement § 5.5 cmt. f. Under the implied warranty of habitability, a landlord must keep the premises in a

---

[2] That section states:

> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

V.I.Code Ann. tit. 1, § 4 (1984).

"safe and sanitary condition," see Hagglund v. American Motors Inn, 18 V.I. 376, 378 (D.V.I.1981), and fit for habitation. See Allen v. Housing Auth. of the County of Chester, 683 F.2d 75, 78 (3d Cir.1982). Under these principles, Christian had a duty to keep the apartment in a state of repair sufficient to meet the standards of the local housing code or minimum standards of habitability.

■ The evidence before the territorial court was sufficient to permit it to find Miller's apartment was not kept in a condition that met minimum local health and safety requirements. The purpose of the Virgin Islands Housing Code "is to promote public safety, health and general welfare through the establishment and enforcement of minimum standards of occupancy, sanitation, light and ventilation, and safety to life and property incident to the use and occupancy of places of residence." V.I.Code Ann. tit. 29, § 331 (1976). Under V.I.Code Ann. tit. 29, § 333(b), Minimum Standards for Health and Sanitation, a landlord is responsible for the care and maintenance of an apartment's sewage system. Id. § 333(b)(1). The evidence before the territorial court showed the sewage problem was recurrent. It also showed the presence of raw sewage in a quantity sufficient to overflow a bathtub and graphically demonstrated its offensive and pervasive nature. It showed additionally that Christian was fully aware of the continuing problem with back-up in the building's sewage lines and that his efforts to correct it permanently were ineffective. After Miller called the Department of Health with a complaint on the fourth recurrence, Christian was informed by the local sanitation inspector that the property was in "deplorable" condition. The sanitation inspector told Christian he would help him find a plumber to fix the sewage problem, but Christian himself finally managed to get one to fix the problem.

■ We have little difficulty in concluding that the presence of raw sewage in Miller's apartment also violated minimum standards of habitability. See, e.g., Allen, 683 F.2d at 78 (overflowing sewage from toilet and sink rendered apartment uninhabitable); Schaefer v. Murphey, 131 Ariz. 295, 640 P.2d 857, 860 (1982) (inoperative toilet is "condition materially affecting health and safety"). Thus, Christian breached the implied warranty of habitability the Restatement incorporates into residential leases.

Section 5.5 of the Restatement, however, does not fully determine whether Miller can recover damages for injury to her per-

sonal property. In practice, the implied warranty of habitability permits a tenant to raise the landlord's breach of the warranty as an affirmative defense if the landlord brings an eviction proceeding against a tenant for failure to pay rent or, if a breach exists, allows the tenant to pay rent under protest and sue the landlord to recover for any decrease in value of the leased premises caused by the landlord's breach. Conille v. Secretary of HUD, 840 F.2d 105, 111 (1st Cir.1988); see Javins v. First Nat'l Realty Corp, 428 F.2d 1071, 1082 (D.C.Cir.1970) (in order to determine rent owed to landlord, tenants must be given opportunity to prove breach of implied warranty of habitability). The District of Columbia Circuit first held in Javins that "leases of urban dwelling units should be interpreted and construed like any other contract" and conditioned the tenant's obligation to pay rent upon the landlord's fulfillment of the implied warranty. Javins, 428 F.2d at 1075. The Javins court stated that its holding extended all contract remedies to the tenant for the landlord's breach of the implied warranty of habitability. Id. at 1082 n. 61.

While section 5.5 of the Restatement recognizes the theory set forth in Javins and its progeny, it limits the tenant to the remedies set out in section 5.4 of the Restatement. Section 5.4 states:

[If] a change in the condition of the leased property caused by the landlord's conduct or failure to fulfill an obligation to repair . . . makes the leased property unsuitable for the use contemplated by the parties and the landlord does not correct the situation within a reasonable time after being requested by the tenant to do so. . . . [T]he tenant may:

(1) terminate the lease in the manner prescribed in § 10.1 and if the change in condition is due to the landlord's fault, recover damages to the extent prescribed in § 10.2; or

(2) if the change in condition is due to the landlord's fault, continue the lease and *obtain* equitable and *legal relief including:*

(a) the *recovery of damages* to the extent prescribed in § 10.2;

(b) an abatement of the rent [until the default is eliminated] to the extent prescribed in § 11.1;

(c) the use of the rent to eliminate the unsuitable condition [after notice to the landlord] to the extent prescribed in § 11.2; and

(d) the withholding of the rent in the manner and to the extent prescribed in § 11.3.

Restatement § 5.4 (emphasis added).

Section 10.2, the section cross-referenced by section 5.4(1), does not even mention damages for injury to a tenant's personal property. It states in pertinent part:

*If the tenant is entitled to recover damages* from the landlord for his failure to fulfill his obligations under the lease, absent a valid agreement as to the measure of damages, *damages may include one or more of the following items* as may be appropriate so long as no double recovery is involved:

(1) if the tenant is entitled to terminate the lease and does so, the fair market value of the lease on the date he terminates the lease;

. . . .

(3) if the tenant is entitled to terminate the lease and does so, reasonable relocation costs;

(4) if the lease is not terminated, reasonable additional costs of substituted premises incurred by the tenant as a result of the landlord's default while the default continues;

. . . .

(6) if the tenant eliminates the default, the reasonable costs incurred by the tenant in eliminating the default; and

(7) interest on the amount recovered at the legal rate for the period appropriate under the circumstances.

Restatement § 10.2 (emphasis added).

Here, Miller is not using Christian's breach as a defense to payment of rent nor is she seeking any costs since she did not pay to repair the plumbing problem nor was she, due to the short duration of the condition, forced to seek substitute premises for herself and her family. Her complaint seeks only "property damages due to failure of [Christian] to make repairs to [her] apartment." App. at 2. Despite the Restatement's limitation of remedies, some courts have held that a tenant may rely on a breach of the implied warranty of habitability in bringing an affirmative cause of action for damages. See George Washington Univ. v. Weintraub, 458 A.2d 43, 46–48 (D.C. 1983); Old Town Dev. Co. v. Langford, 349 N.E.2d 744 (Ind. Ct. App. 1976), superseded by, 267 Ind. 176, 369 N.E.2d 404 (1977).

In Langford, the Indiana Court of Appeals considered at length a landlord's liability for injuries and property damage resulting from an apartment fire caused by a defective heating system. Applying

the teaching of Hadley v. Baxendale, 9 Exch. 341 (1854), it held such items could be recovered as consequential damages. Langford, 349 N.E.2d at 761, 765; see Mease v. Fox, 200 N.W.2d 791, 797 (Iowa 1972) (consequential damages allowable for breach of implied warranty of habitability); Teller v. McCoy, 162 W.Va. 367, 253 S.E.2d 114, 125 (1978) (same).

In Weintraub, the tenants sought to recover damages for the landlord's alleged breach of the implied warranty of habitability. Their apartment was flooded by water coming from the apartment above them. Weintraub, 458 A.2d at 45. The court of appeals rejected strict liability for breach of the warranty of habitability but agreed with the trial court's ruling that the implied warranty "may be used as a sword [to collect damages] as well as a shield [to contest the obligation to pay rent]." Id. at 46. Applying the holding in Javins that leases should be interpreted as contracts, the court held that the tenants could sue for damages under the lease with its implied warranty. Id. at 47. The court declined to hold the landlord liable under this contract theory, however, because "the [District of Columbia] Housing Regulations impose only a duty of reasonable care upon owners of rental property." Id. at 48. It rejected the tenants' position that liability for losses caused by breach of the implied warranty should be imposed "without regard to whether a landlord has been negligent in maintaining defective premises," id., because that position would "render a landlord an insurer of his tenant's property." Id. The court noted that "[l]iability for breach of warranty 'is a curious hybrid, born of the illicit intercourse of tort and contract. . . .'" Id. (quotation omitted). Since the flooding was a "one time thing" and not a defective condition the landlord had actual or constructive notice of, he was not held liable for damages caused by breach of the implied warranty. Id. at 49. Because Restatement section 10.2 does not provide that injuries to a tenant's personal property are recoverable as consequential damages, Miller is not entitled to contract damages under this theory.

Under certain conditions, however, section 17.6 of the Restatement imposes tort liability on a landlord both for breach of the implied warranty of habitability and violation of housing codes. Section 17.6 speaks to a landlord's duty to repair a "dangerous condition" and sets forth the circumstances under which a landlord may be liable to his tenant for "physical harm." It states:

> A landlord is subject to liability for physical harm caused to the tenant and others upon the leased property with the con-

sent of the tenant or his subtenant by a dangerous condition existing before or arising after the tenant has taken possession, if he has failed to exercise reasonable care to repair the condition and the existence of the condition is in violation of:

(1) an implied warranty of habitability; or

(2) a duty created by statute or administrative regulation.

For a definition of "physical harm," we are referred to the Restatement (Second) of Torts. See Restatement Part 6 introd. note at 154. Section 7(3) of the Restatement (Second) of Torts defines "physical harm" to include harm to land and chattels as well as harm to the person. Restatement (Second) of Torts § 7.3 (1965); see also Restatement (Second) of Torts § 497 cmt. b (1965) (rules of negligence "applicable to harm to property as well as harm to the person"). Several courts have recognized that a tenant may recover damages for injuries to both person and property under either section 17.6 or general principles of negligence. See Keck v. Doughman, 392 Pa. Super. 127, 572 A.2d 724, 727 (1990) (stating general principle); see also Keller-Loup Constr. Co. v. Gerstner, 476 P.2d 272, 274 (Col.Ct.App.1970) (landlord liable for damage to tenant's personal property caused by burst water pipe); State Farm Fire & Cas. Co. v. Home Ins. Co., 88 Wis.2d 124, 276 N.W.2d 349, 352 (Ct.App.1979) (same).

Thus, under section 17.6, a landlord's violation of a local statute or ordinance may be negligence per se. See Restatement § 17.6 cmt. a. With respect to a landlord's breach of the implied warranty of habitability, the comment to section 17.6 states:

> The implied warranty of habitability is the basis of a duty on the landlord to maintain the property in a habitable condition. By analogy to the negligence per se doctrine, *when the landlord violates this duty, he becomes subject to liability for physical harm resulting from such violation.*

Id. (emphasis added).

We have already demonstrated that Christian breached the implied warranty of habitability when he failed to correct the recurrent sewage problem. The present record also allows the territorial court to infer that the recurrent presence of sewage in Miller's apartment violated the statutory duty V.I. Code Ann. tit. 29, § 333(b)(1) imposes on all landlords to maintain an adequate sewage system. As previously mentioned, the August 2, 1989 problem was not an isolated incident. Christian knew that similar problems

had occurred in the past and that such problems had not been permanently fixed. Christian testified that, "[w]e try to keep a plumber because we find there is a continuing problem, persons have leak or sewage in there. But may have a backup problem. Usually some type of leak." App. at 30. Christian admits that the sanitation inspector himself noted that the apartment was in a "deplorable condition." Id. at 33. The unsanitary nature of the problem warrants its characterization as a "dangerous condition."

As noted above, section 17.6 imposes liability only if the landlord has "failed to exercise reasonable care" to repair the condition. This essential element of Miller's case is not contradicted by the territorial court's finding that Christian made reasonable efforts to correct the problem on August 4, 1989 after the fourth recurrence. The finding relates only to the immediate problem as it acutely appeared on August 4, 1989, not the chronic condition of the sewage system that served Miller's apartment. Here, the condition was a faulty sewage system which caused overflow in Miller's apartment no less than four times. Each time, Miller notified Christian of the problem but he failed to prevent its recurrence. Christian is subject to liability "after he has had a reasonable opportunity to discover the condition and to remedy it." Restatement (Second) of Property § 17.6 cmt. b. The territorial court recognized this was an "ongoing problem [that] had been reported before." App. at 36. We cannot say this finding is clearly erroneous.

Simply because Christian called in a plumber each time does not mean that he corrected the defective condition within a reasonable time. The recurrent presence of overflowing sewage is a breach of both the local housing code and the implied warranty of habitability entitling Miller to damages. See Simon v. Solomon, 385 Mass. 91, 431 N.E.2d 556, 562 (1982) (landlord liable for breach of implied warranty for failure to permanently correct sewage and flooding problem despite fact that he pumped out water each time); Nepveu v. Rau, 155 Vt. 373, 583 A.2d 1273, 1274 (1990) (landlord breached warranty by failing to adequately repair clogged toilet despite fact that plumbers made two attempts at repair); Gokey v. Bessette, 154 Vt. 560, 580 A.2d 488, 492 (1990) (landlord's response to recurrent sewage problem inadequate); see also Wade v. Jobe, 818 P.2d 1006, 1011 (Utah 1991) (remand for finding whether landlord's failure to permanently correct sewage problem despite fact that he pumped out tenant's basement on several occasions

was breach of implied warranty). The sewage problem in this case was not a "sudden occurrence" or "one time thing" of which Christian had no notice or ability to control. See Weintraub, 458 A.2d at 49; Dwyer v. Skyline Apartments, Inc., 123 N.J.Super. 48, 301 A.2d 463 (App.Div.1973) (landlord not liable for injuries caused when faucet came out of wall because defect not reasonably discoverable).

■■ We hold that Christian did breach his duty to maintain Miller's apartment in a habitable condition and that the sewage problem was a dangerous condition. We reject Christian's contention that the damages award of $450.00 was speculative. Miller presented sufficient evidence to permit a factfinder to award damages in that amount. Accordingly, we will affirm the order of the district court affirming the territorial court's entry of judgment in Miller's favor.

## V.

For the foregoing reasons, we will affirm the order of the district court.